**FASEL v. GUNNING et ux. (No. 8764.)**

(Court of Civil Appeals of Texas. Dallas. Feb. 24, 1923. Rehearing Denied March 31, 1923.)

1. **Parent and child ⊜⇒2(3)—Ultimate question in grandparent's proceedings for possession and custody of minor child in father's possession is whether it is to child's best interest that its custody be placed elsewhere than in father.**

In habeas corpus proceedings by grandparents of a minor against his father to secure his possession and permanent custody, the ultimate question is whether it is to the best interest of the child that his care, custody, and education be placed elsewhere than in his father, his natural guardian.

2. **Habeas corpus ⊜⇒113(12)—Charge submitting questions as to petitioners' and defendant's fitness for custody of child held prejudicial.**

In habeas corpus proceedings by the parents of the deceased mother of a minor against his father to secure his possession and permanent custody, a charge submitting questions as to whether the child's stepmother had forged a check, who had nursed, reared, and trained him from birth, whether defendant drank and gambled while married to the boy's mother, etc., and then, ignoring evidence favorable to defendant's character, submitting the main questions as to defendant's, his wife's, and petitioners' fitness for the child's care and custody, *held* prejudicial error as arguing defendant's unfitness and plaintiffs' fitness, though the court made the jury's findings for petitioners his own.

3. **Parent and child ⊜⇒2(2)—Surviving parent has prima facie right to child's custody.**

The surviving parent of a minor child has the prima facie right to its care and custody, the presumption being that he is the most suitable person, even though he has surrendered such care and custody to others.

4. **Habeas corpus ⊜⇒90—Whether father had voluntarily surrendered child's custody held for jury.**

Whether a father, against whom habeas corpus proceedings were brought by his deceased wife's parents to recover possession and permanent custody of his minor child, had ever voluntarily surrendered its custody to them, *held* for the jury in view of defendant's denial.

5. **Habeas corpus ⊜⇒113(13)—No decree for defendant on reversal of decree for petitioners in habeas corpus proceedings for possession of minor child, in view of evidence of defendant's inability to give proper care to child while ill.**

Where there was evidence, in habeas corpus proceedings by the parents of the deceased mother of a minor child against his father, to secure his possession and permanent custody, that he could not receive, at defendant's home, the close care and attention required because of his delicate health, a decree will not be rendered in defendant's favor, on reversal of a decree for petitioners because of an erroneous charge, though defendant's evidence showed him suitable for the custody of the child.

Error from District Court, Dallas County; E. B. Muse, Judge.

Habeas corpus proceedings by Charles Gunning and wife against James Fasel to secure possession and permanent custody of Charles Gunning Fasel, a minor. Decree for petitioners, and defendant brings error. Reversed and remanded.

Ross M. Scott and Rasbury, Adams, Stennis & Harrell, all of Dallas, for plaintiff in error.

G. Drummond Hunt, of Dallas, for defendants in error.

JONES, C. J. This suit was instituted in the district court of Dallas county by defendants in error Charles Gunning and his wife, Mrs. Minnie Gunning, by habeas corpus proceedings against plaintiff in error, James Fasel, to secure the possession of Charles Gunning Fasel, a minor about five years of age, and to have the permanent custody of said minor awarded to them. Defendants in error are the maternal grandparents of the minor, and plaintiff in error is his father.

The third amended original petition for habeas corpus alleged sufficient facts that would warrant a court in granting to defendants in error the relief they sought. Plaintiff in error filed an answer in which he alleged facts amply sufficient to permit him to be awarded the custody of his minor son. No good purpose can be served by copying the pleadings of either party.

In July, 1914, plaintiff in error and Cora Gunning, now deceased, were married. Cora Gunning was the only child of defendants in error. On the 24th day of February, 1919, the wife, Cora Fasel, died, leaving the said Charles Gunning Fasel as the only fruits of the marriage. This child was born on June 10, 1915, approximately one year after the marriage. During the entire married life of plaintiff in error and his wife, they resided at the home of defendants in error, except for a period of three or four months when they resided at a boarding house, but during this time the child was left with its grandparents; and during the entire time of the child's life, except a day or two before the institution of this suit, this minor had resided in the home of his grandparents. After the death of his wife, plaintiff in error left the home of defendants in error and went to a boarding house, where he resided until after his second marriage. This second marriage

took place in June following the death of the wife in February. The second wife's maiden name was Miss Jewel Hicks, and she was a stenographer and continued such work after the marriage, and was engaged as a stenographer with the Dallas Telephone Company at the time of the trial of this case. She was then earning the sum of $125 per month, and plaintiff in error was at the time of the trial earning approximately $2,200 a year. For a number of years plaintiff in error had worked for the F. A. Hardy Wholesale Optical Company and, from time to time, had been promoted and was at the time of the trial holding an important position with said company.

After his second marriage, plaintiff in error purchased one-half a block of land in Liberty Heights addition to the city of Dallas and, before the filing of this suit, had built a small three-room boxed cottage on this property, and he and his wife were living in this house. It was well finished on the inside and made a comfortable home. At the time of the trial plaintiff in error was in debt in approximately the sum of $2,700. He and his wife used their earnings jointly to defray their living expenses and to gradually pay off this indebtedness, the larger part of which was occasioned by the purchase of the property. Plaintiff in error's mother, 66 years of age at the time of the trial, lived in this house with him, and she stayed at the house alone during the day. Plaintiff in error's working hours appear to have been rather long, and his wife's working hours were from 8:30 to 4:30, during which time she was also absent from the home. On the day before the filing of the suit, plaintiff in error had gone to the home of defendants in error and demanded his child, and had taken him to this home. On the next day, under the writ of habeas corpus, the child was taken away from the home, and since then has resided with his said grandparents, defendants in error, though nominally in the custody of the court.

The evidence discloses that the minor from his babyhood has been a delicate child, easily susceptible to cold and bronchial troubles, and, at one time during the lifetime of his mother, had a severe spell of pneumonia. There is no question but that at the time of the trial this condition of the minor demanded very close and careful attention and nursing, especially when he became sick. The evidence is undisputed that he received very careful attention from his grandparents during all his life, and that they were very much attached to the child, and that their home was a suitable home for him.

The fact that the minor's home had always been with the defendants in error, and the further fact that there is evidence in the record tending to show that plaintiff in error, after the death of his wife, surrendered the care and custody of the minor to the grandparents, perhaps brings this case within the rule that it was the duty of the court upon this hearing to regard the best interests of the child as the paramount issue. Legate v. Legate, 87 Tex. 248, 28 S. W. 281; State v. Deaton, 93 Tex. 243, 54 S. W. 901.

The case was tried before a jury and submitted on special issues, which were all found favorable to defendants in error and against plaintiff in error. The verdict of the jury on these special issues is as follows:

"Did Miss Jewel Hicks, now Mrs. James Fasel, shortly before her marriage to James Fasel, sign the name of one Blanche Gordon to a check? Answer: Yes.

"If you have answered question No. 1 in the affirmative, then did Jewel Hicks have the consent of Blanche Gordon to sign her name to said check, if any? Answer: No.

"If you have answered question No. 1 in the affirmative, then state the amount of said check, and what was done with same by said Jewel Hicks. Answer: Fifteen dollars and fifty cents, cashed at Neiman-Marcus Company.

"Is it to the best interests of Charles Gunning Fasel to place him where he will be under the influence of the present Mrs. James Fasel, formerly Jewel Hicks? Answer: No.

"Who has nursed, reared, and trained Charles Gunning Fasel since his birth? Answer: Mr. and Mrs. Chas. Gunning.

"What attacks of illness has Charles Gunning Fasel had since his birth? Answer: Pneumonia, measles, and frequent colds and bronchial troubles.

"If you have stated that Charles Gunning Fasel since his birth has suffered from attacks of illness, then state whether James Fasel bestowed proper care and attention upon said Charles Gunning Fasel during such attacks of illness, if any? Answer: No, he did not.

"Was James Fasel a drinking man during the time of his marriage to Mrs. Cora Gunning Fasel? Answer: Yes.

"Did James Fasel gamble for money during the time he was married to Mrs. Cora Gunning Fasel? Answer: Yes.

"Did James Fasel, during the time of his marriage to Cora Gunning Fasel, make a habit of gambling for money? Answer: Yes.

"Is the defendant, James Fasel, unfit or disqualified to have the custody and care of his child? Answer yes or no. Answer: Yes.

"Is it for the best interest of this child to take this child from the custody and care of his father and place him in the custody and care of petitioners? Answer: Yes.

"Did James Fasel neglect his wife, Cora Gunning Fasel, and their baby, Charles Gunning Fasel, during the time of his marriage to Cora Gunning Fasel? Answer: Yes.

"Is Charles Gunning Fasel a child of robust health or of delicate health? Answer: Delicate health.

"If you have stated that Charles Gunning Fasel is a child of delicate health, then state what weakness or physical ailment afflicts him. Answer: Bronchial trouble.

"In Charles Gunning Fasel's present physical condition, will it be to his best interests

to occupy the house of James Fasel in Liberty Heights? Answer: No.

"Considering alone the best interests of Charles Gunning Fasel and the fitness of Charles Gunning and wife, Minnie Gunning, and of James Fasel and wife, Jewel Fasel, to have the care, custody, maintenance, and training of Charles Gunning Fasel, who are the proper persons to care for, have custody of, educate, and maintain said Charles Gunning Fasel? Answer: Mr. and Mrs. Chas. Gunning."

Plaintiff in error, by proper assignments of error, assails that portion of the above findings which in effect find that his home is not a suitable home for the minor, as not being sustained by the evidence. He also assails the charge as a whole as being on the weight of the evidence, argumentative, and prejudicial to his rights; and also as confusing, in that a number of mere evidentiary facts were submitted to the jury—facts in no way necessary to be found by the jury for it to arrive at a conclusion on the ultimate fact in the case.

[1, 2] That the charge is subject to this latter objection, it seems to us, cannot be questioned. The ultimate fact to be determined was whether it was to the best interest of the minor for his care, custody, and education to be placed elsewhere than his father, his natural guardian. The questions answered by the jury in reference to certain habits of the father were mere evidentiary matters and not the ultimate matter to be found. The same can be said of the questions asked the jury in reference to some of the acts of his present wife. The charge seems, unconsciously of course, to have been so shaped as to lead the jury, by certain skillfully put questions, the facts about some of which there was no dispute, to answer the questions embracing the main issue unfavorably to plaintiff in error. The jury's mind is directed by these questions to the fact that plaintiff in error had gambled, had drank intoxicating liquors, and, after directing the jury's mind to these questions, and ignoring all the evidence favorable to the character of plaintiff in error; the main question as to his fitness for the custody and care of his child is then given to the jury. The same can be also said in reference to the questions put to the jury as to the present wife of plaintiff in error. This is not all of the wrong done to plaintiff in error by the manner in which this case was submitted. The jury, by questions, has had its mind especially directed to the care and nursing of the minor during his sickness by defendants in error; and then, with these acts of kindness on the part of defendants in error in the jury's mind, the main question in reference to whether they are suitable persons for the custody of the child is submitted to them. In other words, the charge is so framed as to skillfully argue to the jury the unfitness of plaintiff in error for the custody of his child and the fitness of defendants in error for such custody. This method of submitting the case was manifestly highly prejudicial to the rights of plaintiff in error.

The court made the findings of the jury the findings of the court, but this does not lessen the error committed by the manner in which the case was submitted to the jury and thus make these findings a basis for the court's findings.

[3, 4] The plaintiff in error, as the surviving parent of the minor, has the prima facie right to the care and custody of his child. The presumption of law is that by virtue of the sacred relation he sustains to his child, he is the most suitable person to have this care and custody, even though he has heretofore surrendered such care and custody to defendants in error. As to whether plaintiff in error had ever voluntarily surrendered the custody of his child, it seems to us under this record, is a question of fact to be determined by the jury. The learned trial court tried this case on the assumption that this had been done; but this is denied by plaintiff in error, and an issue of fact thereby raised.

[5] Plaintiff in error strenuously insists that this case should be reversed and rendered in his favor. While his evidence showed him suitable for the custody of his child, still there is evidence that tended to support the theory of defendants in error that the minor could not receive the close care and attention required by reason of his delicate health at the home to which plaintiff in error would take him. Because of this fact, and for the further reason that this evidence was found by the jury and the trial court to be true, though strongly contested by plaintiff in error, we do not believe we should reverse and render this case.

As under our view this case must be tried again, we feel that it would be improper to make further observations in reference to the evidence. The case is therefore reversed and remanded for another trial not inconsistent with this opinion.

Reversed and remanded.