### SANCHEZ v. GARCIA et al.   (No. 7460.)

(Court of Civil Appeals of Texas.   San Antonio.   Dec. 16, 1925.)

1. **Habeas corpus** ⊂⊃51—**County attorney without authority to participate in parent's habeas corpus proceedings to determine custody of child.**

Under Rev. St. 1911, art. 2184 et seq., relating to dependent and neglected children, county attorney has not authority on his own motion to participate in habeas corpus proceedings by parent to determine custody of child held by others.

2. **Habeas corpus** ⊂⊃85(1)—**Evidence held insufficient to warrant taking custody of child from father.**

Evidence in habeas corpus proceeding, as to fitness and ability of father to care for child and of fitness of others to whom custody was awarded, held insufficient to justify order taking custody of daughter from father giving it to such other persons.

3. **Parent and child** ⊂⊃2(3)—**Best interests of child control question of custody, but father's custody presumed best.**

Though best interests of child are controlling in determining whether its custody should be given to others than parents, there is a presumption that child's interest and welfare will be best served by giving custody to father.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Habeas corpus proceeding by Nieves Sanchez against Rosa Sanchez de Garcia and husband to determine the custody of the child, Guadalupe Sanchez, wherein the county attorney participated and sought to have custody taken from plaintiff. From a judgment decreeing custody and control to the Garcias, petitioner appeals. Reversed and remanded.

H. W. Williams, of Brownsville, for appellant.

SMITH, J. Appellant, Nieves Sanchez, is a widower with three small children, the oldest of whom, Guadalupe, is 9 years of age. The mother of the children is dead. Shortly before this proceeding was begun, Sanchez entered into an agreement with Anastacio Garcia and wife that they should keep and take care of Guadalupe, who was given over to them for that purpose. No definite period was fixed in which this arrangement was to continue. Subsequently Sanchez asked the Garcias to return his daughter to him, and, upon their refusal, he instituted this proceeding for a writ of habeas corpus to enforce his demand. The Garcias were cited to show cause why they should not surrender the custody and control of the child to her father, but they filed no answer and made no appearance except as witnesses. An assistant county attorney, apparently upon his own motion as such, filed a pleading in which he set up the fact of the father's unfitness and inability to care for his daughter, and prayed that she be given into the custody and control of some proper person, or, in the alternative, that she "be placed in the custody of the juvenile office for attention." Sanchez filed an answer to this pleading, and in such answer, as well as in a separate motion, challenged the authority of the county attorney to appear or participate in the proceeding. The court overruled this objection, and the prosecuting officer participated throughout the hearing as the proponent of his pleading, calling, examining, and cross-examining witnesses. At the conclusion of the hearing, the court rendered judgment against the father, and decreed the custody and control of the child to the Garcias.

[1] In the conduct of the trial, and in his findings and conclusions, the trial court appears to have confused the statutory proceeding for the adjudication and disposition of dependent and neglected children (articles 2184 et seq., R. S. 1911) with an ordinary habeas corpus proceeding to determine, as between individual claimants, the proper custody and control of minor children. The two proceedings are fundamentally different in nature and procedure, although both involve interference with the relation of parent and child, and ought in all cases to be pursued with strict regard for that relation and its preservation against the usurpation of strangers.

In the statutory proceeding for the disposition of neglected and dependent children, any resident of the county having knowledge of the facts may verify and file in the proper court a petition for the adjudication of an infant as a "neglected" or "dependent" child; and such verified petition is essential to the validity of the proceeding. In such case it is made the duty of the county attorney, upon request of the court, to appear and conduct the proceedings in behalf of the petitioner.

───────────────

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

But, since in this case no such verified petition was filed or prosecuted as provided in the statutes mentioned, and as the cause was marked by none of the attributes of the statutory proceeding, it was not brought within the purview of those statutes; and the county attorney's participation in the matter appears to have been without authority, and subject to the objection made thereto by the plaintiff below.

[2] It is not necessary to determine whether or not the irregularity mentioned was such as to require a reversal of the judgment, however; for we have concluded that the record does not justify the order by which the custody of his daughter was taken from the father and placed with the Garcias, who were practically strangers to the child and her family. In the first place, the Garcias do not appear to have evinced such an interest in the child, or in the proceeding to deprive them of her custody, as to entitle them to assume in the place of her father the solemn duty and privilege of molding her future, and of caring for her mental, moral, and physical welfare. For, although they were duly served with notice of the proceeding, they employed no counsel, filed no answer, made no appearance except to testify as witnesses when called to the stand by the county attorney for that purpose. Although Garcia claimed to possess property and means "with which to look after and care for the child," he showed no interest in her except to testify, when called upon, that he was "willing to keep and care for the child, Guadalupe." He expressed no objection to surrendering her to her father, nor may any such objection be inferred from his testimony or conduct in the case. His wife appeared to be equally indifferent to the outcome of the proceeding; she went further, even, than her husband; and, in answer to questions by the court, testified that:

"I am willing to continue to care for this child as I have been doing, and I am able to do so, as I have done in the past, but *I would not object if the court were to take the child from me*, though I have become attached to the child and the child has become attached to me. I would regret that she would be gone into an element that is not good."

On the other hand, the evidence of the father's unfitness or inability to care for his daughter was in a large measure purely hearsay, and was improperly admitted over his objections upon that ground. The most that may be said of the competent testimony upon this phase of the case is that it shows the father is a poor man, a day laborer earning from $1.50 to $2 a day; that he has been a transient, having no home of his own, and sometimes living in a tent alone with Guadalupe. He testified, however, that at the time of the trial he was making his home with his sister and brother-in-law, and expected to continue to do so, and to keep Guadalupe in that home, where she is welcome and would be cared for; that he is able to support and take care of her there, and wanted to do so, "because she is my child, and any one would want to have his child; I want to take the child." His desire to have his daughter with him has been manifested by the employment of able counsel and the filing and prosecution of this proceeding on appeal as well as in the court below, while the Garcias sat idly by, defaulting in the court below as well as in this court. It should be added that Mrs. Garcia testified that Guadalupe, when brought to her by the father, was ragged and filthy, and infested with vermin, and that her father "has bad habits and is a drinking man," but this last charge was a pure conclusion of the witness, based upon no disclosed facts to support it. We think in the foregoing we have fairly stated such facts as were supported by competent testimony.

[3] It is true that in an inquiry of this character the paramount question is that of the best interests of the child, but, under the laws of both God and man, the father is the proper custodian of his children, and the presumption is that their interests and welfare will be best served through his custody. The facts disclosed in the record presented here do not satisfactorily overcome that presumption. That being true, we are unwilling to sustain the judgment of the court below in depriving the father of the custody of his child, and placing it with those who have manifested no more interest in her than that shown by the Garcias.

The judgment is reversed, and the cause remanded.