**JOHNSON et al. v. CAMPBELL et ux.**

No. 10091.

Court of Civil Appeals of Texas.
San Antonio.

June 23, 1937.

Rehearing Denied July 21, 1937.

Knetsch, Stevenson & Knetsch, of Seguin, for appellants.

R. A. Weinert, of Seguin, for appellees.

SLATTON, Justice.

Anna Johnson and her husband, H. L. Johnson, residents of Oklahoma City, Okl., filed this suit in the district court of Guadalupe county, in the nature of a writ of habeas corpus, complaining of Eva Campbell and her husband, E. B. Campbell, residents of Guadalupe county, Tex., alleging that they illegally held the custody of Emma Gene Weiten, who was born November 13, 1925, to Mrs. Johnson, then Mrs. Nick Weiten.

Mrs. Johnson alleged, substantially, that her husband, Nick Weiten, died during the year 1927, and that thereafter she gave the temporary custody of said child to the Campbells, and that she was able and willing and the proper person to have the care, control, and education of her daughter, Emma Gene Weiten.

The Campbells answered, substantially, that during the year 1927, immediately after the death of the father, Nick Weiten, they accommodated Mrs. Johnson, then Mrs. Weiten, by taking the child and Mrs. Weiten into their home, without charge, for a period of five or six months; that thereafter Mrs. Campbell took the child and her mother to Little Rock, Ark., where Mrs. Weiten's mother then resided; that while there Mrs. Weiten gave the care, control, and custody of Emma Gene to Mrs. Campbell, and that some time thereafter Mrs. Weiten married a Mr. Tarver and requested the Campbells to bring Emma Gene to them at Smackover, Ark., which she did; and that shortly thereafter Emma Gene's mother, then Mrs. Tarver, requested Mrs. Campbell to take the care, control, and custody of the said Emma Gene, and that she would never thereafter ask her for the control and custody of Emma Gene.

The Campbells further alleged that they continued to care for and educate and support Emma Gene continuously, until about 1935; that when Mrs. Tarver married her present husband, in 1934, she requested the Campbells to bring the child to see them; that they did so, and while they were on such visit the Johnsons by force kept Emma Gene for a period of four or five months, after which time Emma Gene

ran away and requested the Campbells to meet her at Gainesville, Tex., which they did; and that they continued to care for the child up to the time of the trial.

The trial was to the court, and after hearing all the evidence the court determined that the best interests of the child would be for Mrs. Eva Campbell to have the permanent control and custody of Emma Gene. The Johnsons being dissatisfied with the judgment bring the case here.

The trial court did not file findings of fact or conclusions of law; none were requested by the Johnsons. In this situation, it is elementary that if the judgment of the trial court can be sustained upon any theory of law, it is our duty to do so. In other words, as is said in 3 Tex.Jur. p. 507, § 355: "When in a case tried by the court without a jury there is a statement of facts but no findings of fact or conclusions of law are in the record, to warrant a reversal the appellant must show from the record that under no theory to be gathered therefrom was the court authorized to render the judgment, and the judgment must be affirmed if the evidence as disclosed by the statement of facts supports it on any theory of the case."

The first proposition of appellants is to the effect that Mrs. Johnson being the mother of Emma Gene Weiten, and there being no evidence as to her moral unfitness or physical or financial inability, the court erred as a matter of law in his judgment awarding the custody of the child to Mrs. Eva Campbell. This same contention was overruled in the case of Duckworth v. Thompson et ux. (Tex.Com.App.) 37 S.W.(2d) 731.

We think the law is well established in this state that in a child custody case the paramount and controlling issue before the court is the question of what is the best interest of the child. Legate v. Legate, 87 Tex. 248, 28 S.W. 281; Duckworth v. Thompson, supra; Fasel v. Gunning (Tex.Civ.App.) 249 S.W. 875; Taylor v. McGee (Tex.Civ.App.) 254 S.W. 155; Sanchez v. Garcia (Tex.Civ.App.) 278 S. W. 868; Smith v. Long (Tex.Civ.App.) 181 S.W. 478; Dunn v. Jackson (Tex. Com.App.) 231 S.W. 351.

The evidence offered by the Campbells, and undoubtedly believed by the trial court, shows that Emma Gene Weiten was born November 13, 1925, and that her father, Nick Weiten, passed away in 1927; that thereafter the Campbells accommodated the child and its mother in their home, for a period of five months; and that shortly thereafter the mother, now Mrs. Johnson, gave the custody of Emma Gene to the Campbells. The Campbells took Emma Gene to their home, treated her with loving kindness, administered to her every need, gave her medical attention, sent her to school, and treated her with every consideration, the same as if she were their own child. They further offered evidence that after the marriage of the then Mrs. Weiten to a Mr. Tarver, at Mrs. Tarver's request they took the child to Smackover, Ark., at which time the permanent custody of the child was by the mother given to Mrs. Campbell, with the statement that she would never thereafter ask for the custody of the child, assigning as her reason that Mrs. Campbell loved the child so much, and that the child loved Mrs. Campbell so much, and that she, the then Mrs. Tarver, could not control the child. That thereafter Mrs. Campbell continued to love and nurture the child, the same as if it were her own. That after Mrs. Tarver was divorced from Mr. Tarver, and on the 17th day of April, 1934, married Mr. H. L. Johnson, her present husband, the Johnsons requested a visit of the Campbells to bring the child to their home, and in pursuance to such request the Johnsons kept the child by force, after which the child, within about four or five months, ran away from the Johnsons, in the city of Oklahoma City, Okl., and met the Campbells in the city of Gainesville, Tex., since which time the Campbells have had the sole custody of the child in their home, in the county of Guadalupe; the Campbells continuing, as they had before, to love and nurture the child and treat her as their own. The Campbells offered evidence that during the time the child was in school in the city of Oklahoma, she was unhappy and frequently expressed her desire to return to her "mama" and "daddy" who lived in Texas. Emma Gene, at the time of the trial, being about ten and one-half years of age, testified without objection that she desired to live with the Campbells and was afraid to live in Oklahoma City on account of her stepfather. The testimony offered by the Campbells further showed that they were responsible people, living in Guadalupe county, and that Mr. Campbell was employed by an oil corporation,

and had been so employed for more than fourteen years, and made a salary of $235 per month; that they lived in a nice neighborhood, and in a house with modern conveniences.

Mrs. Johnson testified that while she gave temporary custody of Emma Gene to Mrs. Campbell, she told Mrs. Campbell that it was her intention that when she was so situated to enable her to give the child a good home she desired Mrs. Campbell to return the custody of her child to her.

The trial court was met with the onerous task of deciding the paramount issue: Which home offered to Emma Gene would further the best interests of the child? After hearing all of the evidence, and observing the demeanor of the witnesses on the stand, the trial court determined that it would be to the best interest of Emma Gene to remain with Mr. and Mrs. Campbell.

We have read the evidence heard by the trial court and are of opinion that he correctly determined the controlling issue, in view of all the authorities heretofore cited.

It is indeed unfortunate for the mother of Emma Gene to be denied the custody of her own child. However, while Emma Gene was at the tender age of two and one-half years, she relinquished that custody, either through necessity or otherwise, to Mrs. Campbell, and through necessity or otherwise permitted the child to remain with and to be cared for in the home of the Campbells until she was about ten years of age. While not old enough to be able to determine discreetly which home would be better for her, little Emma Gene is bound by love and long association to Mrs. Campbell, almost the same as if Mrs. Campbell were her mother. To change this relation from the Campbells' home to the Johnsons' home at this late age would, it seems to us, be unfortunate for the child as well as Mrs. Campbell, who cared for the child during its tender years.

In view of the evidence before us and the authorities heretofore cited, we are constrained to hold that the decree of the trial court is correct, and, accordingly, it is affirmed.

### On Motion for Rehearing.

Appellants, by an able motion for rehearing, claim that we erred in our original disposition of this case. We have again considered all of the assignments of error of appellants and believe they are all without merit.

By argument, appellants complain that Mrs. Johnson, the mother of the child, was not allowed, by the trial court, to visit the child. The only question before the trial court and this court was the permanent custody of the child, and our affirmance of the decree of the trial court is, of course, without prejudice to appellants' right to apply to the trial court, or any other district court having jurisdiction, asking for the right to visit the child at such reasonable times as the trial court may determine.

The motion for rehearing is overruled.