## WALKER v. FINNEY.

(Court of Civil Appeals of Texas. Dallas. May 17, 1913. Rehearing Denied June 7, 1913.)

1. TRIAL (§ 139*)—QUESTIONS FOR JURY—DIRECTED VERDICT.

The court is authorized to take a case from the jury only when the evidence is of such a conclusive character that there is no room for ordinary minds to differ in the conclusion to be drawn from it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

2. PARENT AND CHILD (§ 2*)—CUSTODY.

In an action between a father and another over the custody of the father's minor child, the paramount consideration is the interest and welfare of the child; but, the father being the natural guardian, and as such entitled to the custody of his child, it will be awarded him unless he is shown incompetent to have charge of it, or it be demonstrated that the welfare of the child demands a different disposition.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 4–32; Dec. Dig. § 2.*]

3. PARENT AND CHILD (§ 2*)—CUSTODY—ACTIONS—EVIDENCE.

In an action by a father against his deceased wife's sister for the custody of his minor child, evidence as to whether it was for the benefit of the child to be in the custody of his father *held* to raise a question for the jury.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 4–32; Dec. Dig. § 2.*]

4. PARENT AND CHILD (§ 2*)—CUSTODY—AFFECTIONS OF CHILD.

In an action by a father to reclaim the custody of his minor child, whom he had not supported or had any relations with until after the death of the child's mother, when it was some 11 years old, the affections of the child may be considered in determining the question of its disposal.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 4–32; Dec. Dig. § 2.*]

5. PARENT AND CHILD (§ 2*)—CUSTODY OF CHILD — CONCLUSIVENESS OF JUDGMENT — MATTERS CONCLUDED.

An order of the county court, appointing a father guardian of the estate and person of his minor child, who inherited the proceeds of a life policy from his mother, is not conclusive as to the custody of the child, and will not, despite the provision of the Constitution that the district court shall have only appellate jurisdiction over the county court in matters of guardianship, preclude that tribunal from determining the right of the father to the custody of the child, for the statute expressly declares that where one of the parents is dead, the survivor is the natural guardian of the minor children, and entitled to be appointed guardian of their estate, and therefore, although the county court is given jurisdiction of all matters of guardianship, that portion of its order making the father guardian of the child's person is coram non judice.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 4–32; Dec. Dig. § 2.*]

Appeal from District Court, Henderson County; B. H. Gardner, Judge.

Action by R. H. Finney against Mrs. Lilla Walker. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

E. P. Miller, Jo. A. McDonald, and W. L. Faulk, all of Athens, for appellant. Richardson, Watkins & Richardson, of Athens, for appellee.

TALBOT, J. Appellee Finney instituted this suit against appellant for the custody of his minor son, Harry Boyett Finney, alleged to be unlawfully withheld by the appellant, Mrs. Lilla Walker. The case was called for trial, a jury impaneled, and the evidence heard, at the conclusion of which a peremptory instruction was given by the court, directing a verdict in favor of the appellee. The child in controversy is the son of the appellee by his former wife, Eva Finney, from whom appellee had been divorced, and who, a short time before this proceeding was instituted, died in the state of Mississippi. The appellant and Mrs. Eva Finney were sisters, and just before the latter died she requested orally, and perhaps in writing, that appellant take the child, Harry Boyett Finney, who was then about 10 or 11 years of age, to raise and educate. It seems that in obedience to this request the appellant, Mrs. Walker, who was present at her sister's death, but who lived in Henderson county, Tex., took charge of Harry and brought him to her home. It was very shortly after this that appellee instituted this suit.

[1-3] The first assignment of error presents the principal question arising on the appeal, and is that "the court erred in peremptorily instructing the jury to return a verdict for the plaintiff, or relator, R. H. Finney, because the pleadings and evidence raised material issues of fact, which it was the sole province of the jury to decide." This assignment must be sustained, we think, under the familiar rule invoked by appellant to the effect that the court is authorized to take the case from the jury only when the evidence is of such a conclusive character that there is no room for ordinary or reasonable minds, seeking the truth, to differ as to the conclusion to be drawn from it. Such was not in our opinion the conclusive character of the evidence in this case. On the contrary, it was sufficient to take the case to the jury for their determination of the paramount issues in it, namely, whether it was for the best interest of the infant to take it from the custody of its aunt and foster parent and give it to its father. The law applicable to contests of this character is too well settled for discussion. It has been uniformly held that the paramount consideration is the interest and welfare of the child; but that, as the father is the natural guardian of his child, and as such entitled to the custody of its person, it will, in a contest by him, be awarded to him, unless he is shown to be for some reason unworthy or incompetent to take charge of the child, or unless the welfare of the child for some spe-

cial reason demands a different disposition. The evidence will not be quoted in detail, or any opinion expressed as to its weight or credibility, but in explanation simply of our conclusion and ruling, we will state that appellant offered testimony tending to show that the mother of the child in question had insured her life for its benefit in the sum of $1,000 or more, paying herself, unaided by the appellee, all the premiums; that the relator abandoned said child when it was only about 11 months old, and has never contributed or offered to contribute anything for the support and education of said child; that the child at the date of the trial of this case was 11 years old; and that appellee has had no communication whatever with said child since its infancy, and that the appellant and her sister, the mother of the child, lived together many years and worked together, and that the child was in the house with appellant, where it has been kept with her own children jointly with its mother, except for about one year before the death of its mother, and that the child knew practically no difference between its mother and the appellant, Mrs. Walker; that appellant was at the bedside of her sister when she died in the state of Mississippi, and at the dying request of her sister took charge of the child and brought him back to Texas to her home in Henderson county; that the child is nearly 12 years old, and is unwilling to be separated from his home with appellant and placed in the custody of his father; that his father has never shown any affection for him or given anything to help him along in life; that his father has married again, and now has a young wife who has children of her own; that for about two years appellee lived in the same town with his child, neither recognizing nor making any inquiries about him whatever; and that he had been separated from him about 10 years. He testified: "No, I have never spoken to the child during all these years; never have had anything to do with him at all. I don't know whether the child lived here or in Malakoff while I stayed here in Athens; if it was in Malakoff I never went to see it; if it was here in Athens I never went to see it, and I never saw it on the streets of Athens while I lived here; it might be that I could have met the child in the streets here and not have known it." There was further testimony tending to show that before and after the appellee married the mother of the child, and while he lived in the town of Malakoff in Henderson county, Tex., his reputation for truth and veracity and for licentiousness and immorality in that community, from the time he was 18 or 20 years old, was bad. A number of witnesses, claiming to have known him from his childhood, testified to that effect; that such was his reputation while he lived with the mother of the child whose custody he now seeks to recover; that immediately upon hearing of the death of the child's mother he applied for letters of guardianship of the person and estate of the child, and warned the insurance company not to pay the life insurance due the child to any one except himself. There was further testimony to the effect that the child, while in the custody of Mrs. Walker, the appellant, is surrounded by good moral and religious influences, and that he regards her and loves her as a mother; that this love is thoroughly reciprocated by Mrs. Walker and that she is not only willing, but anxious and able to rear and educate the child. The child testified in part: "I am 11 years old, will be 12 next August. Been going to school 3 or 4 years. I am in the low fifth grade. I will go to school here this fall. Auntie there (appellant) has been taking care of me. I want to live with Auntie, Mrs. Walker. My father did not take any notice of me when I went to Greenville. I lived here in Athens right down there on the corner when my father worked in the store here in Athens. If I ever saw him here I did not know him. I understand he was here, he never took any notice of me that I know of, he never did give me anything or send me anything that I know of. I would walk along in front of the store where he was at work. I would go to the telephone, where Mama and Auntie were. Auntie treats me as good as Mama did, and I have everything I want; she is kind to me." There was testimony in contradiction and rebuttal of the foregoing testimony offered by appellant, and appellee further offered in evidence a certified copy of a judgment rendered in the county court of Hunt county, Tex., appointing appellee guardian of the person and estate of the child in controversy, but our conclusion is that the evidence as a whole was sufficient to require the submission of the all-important and vital question, as to whether or not the interest and welfare of the child would be better subserved by placing him in the custody of his father, to the jury for their decision, and that the court's failure to do so is reversible error.

[4] While, as said by this court in Parker v. Wiggins, 86 S. W. 788, the affection cherished for the child by those to whom its care and nurture have been intrusted from his earliest infancy, nor the attachment of the child for his foster parents by reason of kind treatment and association, cannot ordinarily be given serious consideration in determining the vital question of the child's interest and permanent welfare, yet, if the effort to reclaim him has been delayed until the child has reached the age when the presumption may be indulged that he is capable of forming and has formed a lasting affection for those to whom he is indebted for reciprocal love and maintenance, and that the sundering of such ties will subject serious hazard to its interest and happiness, the

same may be considered in determining the question.

[5] But appellee contends, in effect, that as the record shows that prior to the institution of this suit appellee was appointed guardian of the person and estate of the child in controversy, and that since the law specifically gives to guardians the charge and custody of the person of the ward, his custody cannot be taken away from the guardian by any other court, and not by the district court, which under the "Constitution shall only have appellate jurisdiction over county court in all matters of guardianship." This contention, when dealing with guardians other than the father or mother of the minor, is probably correct, but not so, as in this case, where the right of the father as the surviving parent is involved and denied in a proceeding of this character. In such case, the father being the natural guardian of the minor child, no judgment of the county court can give him any greater right or authority over the person of such child or children than he possesses without it. He is such guardian by reason of his relation to the child without appointment by the county court with all the rights and power of control that the word implies. The statute expressly declares that: "Where one of the parents is dead the survivor is the natural guardian of the person of the minor children and entitled to be appointed guardian of their estate." Rev. Civ. St. 1911, art. 4070. In such a case no provision is made by statute for the appointment of the father as guardian of the person of his child. He is declared to be such guardian, and as no necessity exists for his appointment by the probate court, no authority is given by statute therefor, but by virtue of his relation to the child, which confers upon him the guardianship of its person, a preference is given to him by statute to become the guardian of its estate. We conclude, therefore, that the order of the county court of Hunt county appointing appellee guardian of the estate of his son, Harry Boyett Finney, was within the power and jurisdiction of that court and effectual for that purpose, but that in so far as it attempted to constitute and appoint appellant guardian of the person of his said son was without force and effect, especially as affecting the rights of the parties to the custody of the child in this controversy. Manifestly this is true, because it is clear, and cannot successfully be denied, that if in a proper proceeding in a court of competent jurisdiction the order appointing appellant guardian of the person of the child was set aside and annulled, he would still be its guardian, and as effectually so as if the order remained in full force and effect. The authorities cited by counsel for appellee in support of their contention that his appointment as guardian of the person of his son by the county court of Hunt county was conclusive of his right to recover the child's custody in this suit have been examined, with the conclusion reached that they are not in point. The contention of appellant that the order of the county court of Hunt county appointing appellee guardian of the person of his son was immaterial to the issue in this proceeding is well taken, and the objection to its introduction should have been sustained.

The judgment is reversed, and the cause remanded.