**MILLER v. BANKS.   (No. 6922.)** *

(Court of Civil Appeals of Texas. Austin.
Jan. 27, 1926. Rehearing Denied
Feb. 17, 1926.)

**1. Parent and child ⊙⟶2(2).**

Parent is not entitled as matter of law to custody of minor children, even though he is suitable person to rear and educate them.

**2. Parent and child ⊙⟶2(2).**

Judgment awarding father's minor children to deceased wife's sister instead of to father, who remarried, *held* not error, where, though each was suitable person, the children preferred to live with the sister-in-law.

Appeal from District Court, Navarro County; Hawkins Scarbrough, Judge.

Proceeding by Mina J. Banks against R. L. Miller to restrain defendant from interfering with plaintiff's custody of his children. From an adverse judgment, defendant appeals. Affirmed.

H. B. Daviss and Callicutt & Upchurch, all of Corsicana, for appellant.

Richard Mays and J. S. Simkins, both of Corsicana, for appellee.

McCLENDON, C. J.   On a former day of this term, the appeal in this case was dismissed because appellant had not filed his briefs as required by law. See 276 S. W. 768.

Appellant later moved to reinstate the appeal, asserting that the record presents fundamental error. We granted the motion for the purpose only of determining whether fundamental error is presented.

The contest involves the custody of Raymond Miller and Robert Miller, two minor sons of appellant. Appellee is the sister of appellant's first wife, now deceased, who was the mother of the minors. The trial court awarded the custody of the minors to appellee. The trial was by jury upon special issues. The questions propounded to the jury and their answers follow:

"(1) Is the plaintiff, Miss Mina J. Banks, a proper and fit person to have the care and custody of the two minor children, Raymond and Robert Miller, taking into consideration her physical, moral, and financial ability to care for them?   Answer 'Yes' or 'No.'   Answer: Yes.

"(2) Is the defendant, R. L. Miller, a proper and fit person to have the care and custody of the two minor children, Raymond and Robert Miller, taking into consideration his moral and financial ability to care for them?   Answer 'Yes' or 'No.'   Answer: Yes.

"(3) Taking into consideration the physical, moral, and financial ability of the plaintiff, Miss Mina J. Banks, and the moral and financial ability of the defendant, R. L. Miller, and taking into consideration the wishes of the two minor children, Robert and Raymond Miller, if any, and determining this question purely from the standpoint of the best interests of said two minor children, state in your answer whether said children should be left in the care and custody of the plaintiff, Miss Mina J. Banks, or the defendant, R. L. Miller.   You will write the name of the person in the answer below to whom you have awarded said children.   Answer: Miss Mina J. Banks. '

"(4) Did the defendant, R. L. Miller, give over to the plaintiff, Miss Mina J. Banks, the care, custody, and control of said two minor children, Raymond and Robert Miller?   Answer 'Yes' or 'No.'   Answer: Yes."

Both parties moved for judgment upon this verdict.   Appellant's motion was overruled, and that of appellee was granted, and in entering judgment the court expressly adopted the findings of the jury.   We will therefore treat these findings as expressing the views of the trial court as well as those of the jury.   Joseph v. Puryear (Tex. Civ. App.) 273 S. W. 974.

[1] It is appellant's contention that he is entitled as a matter of law to the custody of his two minor children upon the second finding, regardless of the three remaining findings of the court and jury.   With this contention we cannot agree.   It is based upon the assertion that the parent is in every case entitled to the custody of his minor children, provided he be a suitable person to rear and educate them.

[2] This is the apparent holding in State v. Deaton, 54 S. W. 901, 93 Tex. 243.   A number of other Texas decisions announce in general terms the same rule.   But Dunn v. Jackson, 231 S. W. 351, by Section A of the Commission of Appeals, holds that, where the parent has placed a child of tender years with another to be reared and educated, and a new relation has grown up between the child and its foster parent, with strong ties of affection both by the foster parent for the child and by the child for the foster parent, and the latter, after arriving at an age of sufficient discretion to appreciate the situation, is desirous of its being continued and not broken up, a finding by the trial court that the best interest of the child will be subserved by leaving it with the foster parent and denying to the natural parent the right he would otherwise have to its custody will not be disturbed.   The question is so thoroughly discussed in the opinion in Dunn v. Jackson that we think it unnecessary to do more than state the conclusion there reached. This was the only question presented in the case, and the holding, which had the express approval of the Supreme Court, was absolutely necessary to the judgment which the Supreme Court adopted.

The findings, therefore, under the third special issue to the effect that the best interest of the minors will be subserved by

leaving them in the care and custody of appellee is not necessarily in conflict with the finding that appellant is a proper and fit person to have their care and custody.

The statement of facts in the case embraces 222 pages of legal cap, typewritten matter, and contains much reiteration, and a great deal that might be abbreviated or left out altogether. But we have carefully perused it with a view of determining whether the judgment of the trial court finds support in the evidence. We have reached the conclusion that, giving full force to the finding that appellant is a suitable and fit person for the care and custody of his minor children, there is still ample evidence to support the remaining findings and the judgment of the trial court.

There is a great deal of conflict in the testimony regarding appellant's conduct towards his first wife and his treatment of his two older sons, and there is also some conflict in the testimony regarding the disposition of appellee. But these conflicts are confined, in the main, if not entirely, to the parties to the litigation themselves and relatives who appear more or less biased, and it is quite evident that the jury and the trial court either disregarded this evidence entirely or gave to it very little weight. The main outlines of the situation which the case presents may be briefly summarized as follows: Appellant was married twice, the first time to Miss Hatcher Banks, on January 4, 1898. Of this marriage four children were born, all boys. Appellant was engaged in farming and stock raising during most of his life, but at times he ran a dairy, and frequently traded his real estate and moved from place to place, having resided in East Texas, Navarro county, Ochiltree county, Hamilton county, and at the time of the suit in Hidalgo county. He had little or no property at the time of his marriage. His first wife died on January 31, 1919, in Hamilton county, where appellant then resided. The two minors in question were then seven and three years old, respectively. Mrs. Miller's death was due to influenza, which was then epidemic, and appellant was then either in bed or convalescing from the same disease. Shortly after Mrs. Miller's death appellee went to Hamilton county and got the two children and took them to her home near Corsicana, and they have resided with her ever since. She testified that the appellant sent for her for this purpose, requested her to take the children, and told her that she could keep them and raise and educate them. This appellant denies, but the issue was concluded by the finding of the court and jury in appellee's favor. At the time of Mrs. Miller's death the appellant owned a large ranch, which was heavily incumbered, and, according to his testimony, the equity in the entire property, all of which was community, amounted to about $13,000. Appellant finally went to Hidalgo county, where he acquired a residence in the town of Donna and an irrigated tract of land of about 32 acres. This property he conceded was community of his first marriage, and one-half interest therein belongs to his four children. In June, 1923, appellant married again, and he and his wife live at Donna. The second wife had never been previously married. Both appellant and his second wife expressed themselves as very fond of the two minor children, and testified to being very anxious to have their custody, and to care for and educate them.

This proceeding was instituted by the appellee in June, 1922, in the form of an application for an injunction to restrain the appellant from interfering with her custody of the children. The suit was not tried until March, 1924. The record shows that from the time of the death of appellant's first wife up to the time the suit was filed he had never visited his children, but they had visited him once. His testimony was that during the five years between his first wife's death and the date of the trial he had contributed about $500 or $600 to the support of the children. Appellee testified, however, that the total amount of his contribution during that period was $225. Whether he ever visited or attempted to visit his children after the suit was filed the record does not disclose. It shows, however, he had a good home in a good community at the time of the trial, and was amply able to care for and educate them.

The record shows, on the other hand, that the two children had remained with appellee from early in February, 1919, until the trial in March, 1924, a little over five years; that during that time she had given them every attention that a mother could. The older one had been sent to school regularly, was well advanced, and had made good grades. They were both dutiful, obedient children; were well dressed; well behaved; and had all the comforts and advantages of a good Christian home in a good community with good schools and churches. Each of the children was placed upon the stand and testified that he preferred living with appellee.

The facts in Dunn v. Jackson, it is true, present a somewhat stronger case than that at bar, in that there the relation between the child and the foster parent had existed for a longer time, and an estrangement had grown up between the child on the one hand and the father and stepmother on the other. But on the whole the facts here shown present a case much more analogous to that of Dunn v. Jackson than to that of State v. Deaton. Viewing the situation in the most favorable light which the evidence will warrant, while at the same time giving to the findings upon which the judgment is based their full significance, we conclude that there is no necessary inconsistency in those find-

ings, and that they amply support the trial court's judgment.

That judgment we affirm.

Affirmed.