## JONES v. WARREN et al. (No. 9034.)

Court of Civil Appeals of Texas. Galveston. Nov. 3, 1927.

1. Habeas corpus �köw85(1)—Evidence held to show that welfare of child required it to remain in custody of its grandparents rather than its father.

In habeas corpus proceeding, evidence *held* to show that welfare of child required it to remain in custody of its grandparents rather than its father.

2. Parent and child ⊫2(4)—Decrees affecting custody of small children are responsive to existing conditions and susceptible of change on new statement of facts.

Decrees affecting the custody of small children are not in their nature permanent, but are responsive to particular conditions existing, and are susceptible of abrogation or change on the development of a different state of facts.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Habeas corpus proceeding by A. W. Jones against A. A. Warren and another to obtain the custody of a minor child. From a judgment for respondents, petitioner appeals. Affirmed.

Will R. Parker and Virgil R. Parker, both of Fort Worth, and J. S. Bracewell, of Houston, for appellant.

Sam H. Lewis, of Houston, for appellees.

GRAVES, J. This proceeding was instituted by appellant to regain from appellees the custody of his minor child. The trial in the court below without a jury resulted in a judgment in favor of the appellees for the custody of the child, but decreeing that appellant might visit her at their home at any and all reasonable times.

The facts disclosed by the record are, with two or three noncontrolling recitations which we have deleted as not being supported by the testimony, correctly stated by the learned trial judge in the following conclusions of fact and law, which are here adopted as the conclusions of this court:

"I find:

"(1) That Mary Jones is a girl 5 years of age, the daughter of A .W. Jones, relator herein. Respondents, Mrs. Mary Warren and A. A. Warren, are the mother and stepfather of relator, A. W. Jones, and the grandmother and stepgrandfather of Mary Jones.

"(2) That, when Mary Jones was about 3 weeks old, and Wilma Jones, her sister, about 2 years old, their mother died, and they were, by agreement of the parties, placed in the custody of the respondents, Mrs. Mary Warren and A. A. Warren.

"(3) That respondents have had the custody of Mary Jones continuously up to the time of the trial, under a verbal promise by A. W. Jones that respondents would always have custody of said child, and had custody of Wilma Jones until about July 1, 1926.

"(4) That A. W. Jones, relator herein, lived at the home of respondents in Fort Worth, Tex., until April, 1925, at which time respondents moved to Houston, bringing Mary Jones and her sister, Wilma Jones, with them. A. W. Jones continued to live in Fort Worth.

"(5) That, at the time of the above removal, A. W. Jones agreed to contribute $7 per week to respondents for the support and maintenance of his two children.

"(6) That A. W. Jones has * * * paid only $163 for their support during the 18-month period prior to the trial, even a portion of this amount going to pay his lodge dues, and $90 of said amount having been paid at one time. That relator during said period made only two visits to see his children—one time when his mother wired in regard to sickness of Mary Jones, and the other time at the request of his mother to get the older girl last July, and wrote

⊫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

only two letters and two cards to either his mother or the children.

"(7) That during the period between April, 1925, and the date of the trial, A. W. Jones was employed all of the time and actually earned from $145 to $180 per month, and was amply able financially to care for his children's physical needs.

"(8) That on or about July 5th relator married a grass widow who has two children of a former marriage. That relator and his wife now have with them at their residence in Fort Worth the two children of the wife and Wilma Jones, the oldest of relator's children; the residence mentioned being rented premises.

"(9) That relator's present wife does not understand the condition of Mary Jones, and does not understand the dieting and care necessary under the circumstances surrounding the child. * * *

"(10) That respondents, Mrs. Mary Warren and A. A. Warren, are about 52 years of age, and are proper persons to raise and educate said minor child, Mary Jones, and are able and willing and will provide for the proper care and education for Mary Jones.

"(11) That Mrs. Mary Warren is in good health at this time, and is physically able to care for said child, and has great or greater interest in the welfare of said child as the relator himself.

"(12) That the health of Mrs. Mary Warren was poor during the summer of 1926, caused by worry over the failure of her son, A. W. Jones, to write to her or to his children. * * *

"(13) That Mary Jones, at the present time, is not a healthy child, but is very weak, frail, and anemic, and that her health would probably be jeopardized if her possession was changed at this time.

"(14) That Mary Jones is suffering from what is commonly called 'leakage of the heart,' and that she has been under the care of Dr. Durham of the Heights Clinic for a period of 12 months, his charges and all expenses of child's sickness being paid by respondents, during which time her condition has somewhat improved, but, as her appearance unquestionably indicates, is by no means well.

"(15) That during said period the grandmother, Mrs. Mary Warren, acting under the doctor's orders, has been dieting said child, and that, because of her custody and care of said child in the past, Mrs. Mary Warren understands the disposition and condition of said child, and that she is specially fitted thereby to care for her. That Mrs. Mary Warren is a motherly woman, an exhibits an unusual interest in the welfare of Mary Jones, and feels a mother's love and affection for her. The best interest of the minor child, the court finds, will be preserved by allowing her to remain with respondents, Mrs. Mary Warren and A. A. Warren.

"Conclusions of Law.

"I conclude as a matter of law that the best interest of the minor, Mary Jones, in her present delicate state of health, require that she be remanded to the custody and control of the respondents, Mrs. Mary Warren and A. A. Warren, and it is so ordered."

Appellant's general contention on the appeal is that "the evidence was insufficient to overcome the legal presumption of law that the welfare of a child will best be preserved in the custody of its parent," citing, as the leading case in support, State v. Deaton, 93 Tex. 243, 54 S. W. 901.

[1] While we agree with him that neither appellant nor his present wife were shown to be unworthy the trust of rearing this child and for that reason have declined approval of the three short recitations in the findings below that might import otherwise, the presumption applicable is one of fact, rebuttable upon sufficient proof, and we think that quantum of proof was before the trial court in this instance. As this court said in Cecacci v. Martelli, 235 S. W. 951, where the precise question here involved was determined upon facts in legal effect not different from those here obtaining, our Supreme Court did not announce a different doctrine in the Deaton Case, but on the contrary quoted with approval as the true rule on the subject this declaration from Weir v. Marley, 99 Mo. 484, 12 S. W. 798, 6 L. R. A. 672:

"What is for the best interest of the infant is the question upon which all cases turn, at last, whatever may be said in the opinions about contracts, and the answer returned, is that the custody of the child is by law with the father, unless it appears by satisfactory evidence that the best interest of the child demands that he should be deprived of that custody, and upon him who so avers devolves the burden of proof. The presumptions are against it."

The Supreme Court further simply determined that the facts found in the trial court, which culminated with the epitome, "I find that the interest and welfare of the child, Austin Dillard, will be as well, if not better, subserved by remaining with the respondent and his wife, who have adopted it as their own, than if his possession and custody were given to his mother, the applicant herein," did not establish with the required certainty that the interest of the child demanded his being taken from his mother and continued in the possession of another.

The situation of this little girl was shown to be decidedly different, especially with reference to her state of health, and the trial judge's finding that her best interest lay in a continuation of her grandmother's custody should be upheld upon that consideration, if no other; there being no indication that the facts stated in this connection were in any particular against the evidence. Evidently born with a very weak physical endowment, the child came into the care of a devoted, experienced, and capable grandmother when 3 weeks old, remaining for 5 years under her efficient ministrations until the time of this trial. Still very frail, she was then found to be suffering both from anemia and "leakage of the heart," having already been under the care of a particular physician at Houston for these troubles for a year, and requiring the

most discriminating care in the matter of diet and treatment. The able and experienced trial judge was thus confronted with a condition, not a theory, to deal with, and in view of all the unchallenged evidence adverted to, while doubtless fully mindful of the presumptive right of the father in different circumstances, shrank from the responsibility, in these uncertain conditions, of changing the environment of this delicate child by sending her to a distant part of the state, into hands not found to be so competent to care for her peculiar needs. Neither can this court, in the state of the record before it, take a different view.

[2] It goes without saying that such orders affecting the custody of small minors do not in the nature of the case bespeak any perpetuities, but rather, being responsive always to particular conditions existing at the time, are susceptible of abrogation or change upon the development of a different state of facts.

As before indicated, the case as presented being determinable upon the facts, it would merely be a work of supererogation to reiterate the principles of law governing proceedings of the kind, since those are all so plainly and uniformly declared in the three cases to which reference has been made.

It follows that the judgment should be affirmed; that order has accordingly been entered.

Affirmed.