## SEARS et ux. v. DAVIS et ux. (No. 534.)

Court of Civil Appeals of Texas. Eastland.
May 31, 1929.

Rehearing Denied July 12, 1929.

Jno. W. Woods, of Dallas, and Mack &
Mack, of Fort Worth, for appellants.

Paul V. Harrell, of Cross Plains, and Samuels, Foster, Brown & McGee, of Fort Worth,
for appellees.

FUNDERBURK, J. This suit, a habeas corpus proceeding, was brought by appellants, T. D. Sears and wife, Alva McBroom Sears, against appellees Porter J. Davis and wife, Annie Davis, to recover possession and custody of Kent Sears, Jr., the minor son of appellants. The appellants' pleading consists of a brief application for the writ, among the meager allegations of which are that said Kent Sears, Jr., is the minor child of appellants, is in their possession, and is illegally restrained of his liberty by the said Porter J. Davis and wife, Annie Davis. Appellees, by way of answer to the writ, after a general demurrer and general denial, alleged that Mrs. Alva McBroom Sears, under the name of Alva McBroom, had, by written instrument duly acknowledged, empowered the Hope Cottage Association of Dallas County to secure for her infant child a home with people of their selection, who may or may not adopt said child; that under such authority respondents took said child on July 7, 1925, and on said date adopted it; that if there was any fraud practiced upon the said mother of the child in obtaining her signature and acknowledgment to said instrument, they were not parties thereto, not knowing of same, and that it occurred prior to the time they received the child; that they acted in good faith in so adopting said child, and said Alva McBroom is estopped from asserting any fraud practiced upon her in obtaining her signature to the instrument. The answer further alleged the good moral character of both the respondents; that they had never abused or neglected the child; that the child had been in their exclusive custody, control, and possession for almost three years and ever since it was approximately three months of age; that they had become greatly attached to the child and it to them; that

they had made and provided for it a good home, were rearing it under good influence and Christian surroundings,; were able to and would properly provide, care for, and educate said child; and that it was to the best interest of the child that it remain in their exclusive custody, care, and control. The answer further averred that respondents had no other children and their affections had been and were being lavished upon said child.

Upon the trial before the court without a jury, judgment was rendered in favor of the respondents, awarding to them the permanent care, custody, control, and possession of the child. The relators have appealed.

The trial judge, in response to proper request therefor, filed conclusions of fact and law. The findings of fact, briefly summarized and omitting such as are deemed immaterial, were: That Kent McBroom Sears was born out of wedlock on April 21, 1925; was a few hours later sent to Hope Cottage in Dallas; that on April 28, 1925, when the child was a week old, the mother signed, executed, and acknowledged an instrument in which she recited that the father of the child was Richard Jones, and authorized and empowered the Hope Cottage Association to secure for the child a home with people of their selection who might or might not adopt it; that she waived any and all liability that might accrue by virtue of her parental authority; that on July 7, 1925, said child was placed by Hope Cottage Association with Porter J. Davis and wife, Annie Davis, who on said day duly and legally adopted said child; that respondents have no natural children, have looked after and cared for said child with as much solicitude and care, and have supplied all of its wants and have lavished their affections on it as freely as if it were their natural child; that it has been with them since infancy, knows no other home or parents; that it is in an ideal home; respondents are church people, members of and attend church, and the child will be reared by them under church influence, properly educated by them; that respondents are industrious, frugal, and economical, and have accumulated property of the value of $12,000, including a home owned by them in close proximity to churches and good schools. The court further found that it would be a great injustice to the child to sever its then existing relationship, and that the best interest of the child required that it remain in the custody and control of the respondents. The court further found that the mother, at the time of the execution of said instrument, was not married, and that the father was asserting no claim to the child, and that it was in pursuance of the authority set out in said instrument that the child was placed with the respondents and by them duly and legally adopted. It was further found that plaintiffs were married about April 30, 1925, some 30 days after the birth of the child; that neither of them have ever evidenced any great concern or displayed any great affection for the child; that they have never contributed anything to its support or maintenance; that during about 15 days when the mother remained at the maternity home where the child was born, the father visited her three or four times; that plaintiffs left Dallas together and neither undertook to see the child nor to inquire concerning its welfare until about August 17, 1925, during which time neither manifested any interest in the welfare of the child; that after about two years suit was filed by plaintiffs in the district court of Dallas county, seeking to recover custody and possession of said child; that up to the time of filing of said suit, outside of two letters addressed to Hope Cottage Association, in response to which information was given that the child was adopted by good people, neither of the plaintiffs made any inquiry concerning the child.

Further findings were that plaintiffs do not own any home, that they are tenants living some three or four miles from school and churches; that they have no property other than some farming tools, implements, workstock, and about 25 head of cattle, and an unharvested grain crop, consisting of wheat and oats of an undetermined amount, and a cotton crop of about 25 acres, planted but not matured; that plaintiffs had no connection or association with said child since its birth, and there are no ties of affection existing between it and them, and that the respondents are much better qualified intellectually and morally, and better suited and equipped, for the proper rearing and educating of said child than are the plaintiffs. It was further found that to destroy or discontinue its present relationship would work great and unnecessary hardship on the child and might materially affect its future; that the child's welfare might be greatly impaired by making any change in its relationship, due to the fact that it had been and was growing up as a member of the family of respondents; that it knows no other home or parents, and it would be much to the advantage and benefit of the child to permit it to remain in the custody and control of the respondents, who were in all respects better suited and better fitted to have the care, custody, and control of said child than the plaintiffs.

■■ We sustain appellants' contentions to the effect that appellees acquired no rights to the custody of the child by virtue of the writing signed by Mrs. Sears or by the fact of adoption. The instrument in question, omitting acknowledgment, is as follows:

"State of Texas, County of Dallas.

"Know All Men by These Presents: That I, Alva McBroom of Dallas County, in the State of Texas, for and in consideration of the benefits that will accrue to my child, hereby authorize and empower Hope Cottage Associa-

tion of the City and County of Dallas, in the State of Texas, to place my infant son, whose father is Richard Jones, and fully authorize the said Hope Cottage Association to secure for the said child a home with people of their selection, who may or may not adopt said child, hereby waiving any and all liability that may accrue by virtue of the hereinbefore mentioned authority, and agree that no accounting shall be made to me at any time of the whereabouts of the said child.

"Witness my hand at Dallas, this 8th day of April, A. D. 1925.

"Alva McBroom,<br>"Mother.<br><br>"_____<br>"Father."

Our original adoption statute, first enacted in 1850, provided that any person wishing to adopt another as his legal heir shall file in the office of the county clerk of the county in which he resides, a written statement signed by him and duly authenticated or acknowledged, as deeds are required to be, reciting, in substance, that he adopts the person named therein as his legal heir, and the same shall be admitted to record in said office. Rev. St. 1925, art. 42. This statute alone did not operate to confer upon a person adopting a child the right to its custody. Its effect was stated in the State ex rel. Walton v. Yturria, 109 Tex. 220, 204 S. W. 315, L. R. A. 1918F, 1079, as follows: "On the authority of Eckford v. Knox [67 Tex. 204, 2 S. W. 372], it was determined in Taylor v. Deseve, 81 Tex. 249, 16 S. W. 1008, that adoption in Texas did not have the same effect as paternity and filiation, and did not make the adopted person a constituent of the family of the adopter."

Rev. St. 1925, art. 44, was enacted in 1907, and provides: "The parent or parents, of a child *who is to be so adopted* may, by an instrument in writing duly signed, and authenticated or acknowledged as deeds are required to be, transfer their parental authority and custody over such child to the *adoptive parent.* Where the lawful parent or parents have voluntarily abandoned such child and left it to the care of others for a period of *at least three years*, or voluntarily left it to be cared for by charity for a period of *at least three years*, and such child shall be so adopted, such parent or parents shall be held to have transferred their parental authority and custody over said child to the *adoptive parent;* and in all such cases such lawful parents shall thereafter be barred' from exercising any authority, control or custody over the person or estate of such child as against the adoptive parent. *No adoptive parent shall transfer his authority and custody to any other person.*" (Italics ours.)

Prior to the enactment of the statute just quoted, agreements to transfer parental authority and custody were held not to constitute binding obligations. State v. Deaton, 93 Tex. 248, 54 S. W. 901; Taylor v. Deseve, 81 Tex. 248, 16 S. W. 1008; Legate v. Legate, 87 Tex. 248, 28 S. W. 281; Ex parte Sams (Tex. Civ. App.) 161 S. W. 388; Garner v. Bowles (Tex. Civ. App.) 233 S. W. 300; Stanton v. Franklin (Tex. Civ. App.) 236 S. W. 151.

Manifestly the purpose of article 44 was to make certain the conditions under which a person contemplating the adoption of a child could do so with the assurance that he would thereafter have all the rights to the custody of the child that a natural parent would have. Since the law looked with disfavor upon such agreements, and the validity of such an agreement was dependent upon the statute, it necessarily follows that the provisions of the statute must .be, at least substantially, complied with. An agreement respecting the relinquishment by a parent of the custody of a child, which does not contemplate adoption of the child by a particular person, is, we think, of no more binding effect than were all such agreements prior to the enactment of said statute. The statute itself, when read in the light of its purpose aforesaid, implies the invalidity of an agreement like the one we have here. It does not purport to be a transfer to any one. Rather, it is in terms a power of attorney, attempting to authorize Hope Cottage Association to transfer the custody of the child to some unknown person who may have no intention to adopt it and may have previously declared such want of intention. If a proper transfer had been made directly to Hope Cottage Association, the latter, under express provision of the statute, could not have made a further transfer to a third person. It seems to us entirely inconsistent with the spirit and purpose of the law to say that under a power of attorney it may do so, and thus defeat the manifest purpose of the law to afford the parent the opportunity of making personal choice of the one who ever afterwards, in legal contemplation, is to be substituted for such parent. We can therefore reach no other conclusion than that the instrument in question is void, or, in all events, ineffective to transfer parental custody and control of the child.

The attempted transfer being void and the act of adoption being ineffective to accomplish any transfer of the right of custody, it results that, if the voluntary relinquishment of possession of the child can be construed as an abandonment, as to which the trial court made no finding, such abandonment did not continue for as long as three years, and therefore did not supply, under the statute, the legal equivalent of a proper transfer. The uncontroverted evidence shows that well within the three years' period appellants were already litigating their claim to the custody of the child.

An estoppel was pleaded, but we know

of no authority recognizing the principle of estoppel as applicable to facts similar to those of this case. Hence we are forced to conclude, as a matter of law, that the custody of the child should have been given to its father and mother, unless there was presented and properly determined an issue concerning the best interest and welfare of the child.

The last-named question is by no means free from difficulty. In our investigation we have had occasion to marvel at the great number of cases in this state involving the custody of children. The great number, however, is perhaps no more remarkable than is the diversity of opinion expressed. In Legate v. Legate, 87 Tex. 248, 28 S. W. 281, the Supreme Court held that, where a parent, by writing or otherwise, voluntarily transfers and delivers possession of a minor child into the custody and under the control of another, and then seeks to recover possession of the child by habeas corpus, the parent is thereby invoking the equitable discretion of the court to disrupt private domestic relations which he has voluntarily brought about, "and the court will not grant the relief, unless upon a hearing of all the facts it is of opinion that the best interests of the child would be promoted thereby." The court further said: "We hold, as a matter of law, that it [that is, the child] is entitled to the benefit of that home and environments which will probably best promote the interest of the infant." Later the trial court, as also the Court of Civil Appeals in State ex rel. Wood v. Deaton, 93 Tex. 248, 54 S. W. 901, with a very similar state of facts before them, construed Legate v. Legate, supra, to place the burden of proof upon the parent in such case to show that it was for the best interest of the child to disturb the existing relation by awarding the custody to the parent. Such construction, therefore, resulted in both courts holding, upon a finding that the parent was qualified but that respondent was as well or better qualified, that the custody of the child should be awarded to the respondent, and it was adjudged accordingly. The Supreme Court, however, while justifying the lower courts in so construing the former decision, held that that question was expressly not decided in said case. As to who had the burden of proof, the court, quoting approvingly from Weir v. Marley, 99 Mo. 484, 12 S. W. 798, 6 L. R. A. 672, said: " * * * The custody of the child is by law with the father, unless it appears by satisfactory evidence that the best interest of the child demands that he should be deprived of that custody, and upon him, who so avers, devolves the burden of proof. The presumptions are against it." Had the court gone no further, the two decisions would have been in no necessary conflict. Respondent (when not the parent) could have tendered the issue of the child's welfare in ei-

ther of two ways. He could (1) allege facts claimed to show a disqualification of the parent; or (2) he could allege facts to permit a weighing or balancing of advantages and disadvantages favorable to respondents' custody of the child. By doing either he would conform to Legate v. Legate, unaffected by the decision in State v. Deaton other than to place upon him the whole burden of proof. But the Supreme Court did not stop with the decision only of the question of the burden of proof. The court further said: "When the parent has parted with the possession and control of his or her child and seeks to regain that possession through the courts, it becomes the duty of the court, *in a proper case*, to protect the child against the evil results that may flow to it from an improper direction through *incompetent or disqualified parents.* * * * *In the absence of any positive disqualification of the father for the proper discharge of his parental duties, he has, as it seems to us, a paramount right to the custody of his infant child, which no court is at liberty to disregard.* And while we are bound also to regard the permanent interests and welfare of the child, *it is to be presumed that its interests and welfare will be best promoted by continuing that guardianship which the law has provided, until it is made plainly to appear that the father is no longer worthy of the trust.*" (Italics ours.)

Having so decided, the effect, it would seem, was to eliminate the second alternative mentioned above. In other words, the Supreme Court here plainly holds that the presumption that the best interests and welfare of the child requires that its custody be given to the natural parent can only be overcome so as to raise an issue of fact on the question of the child's best interest and welfare, upon a showing of the parent's disqualification. Under the undoubted logic of this decision, no occasion arises for a court to hear evidence and attempt to weigh and balance the relative advantages and disadvantages offered by the contending parties, unless and until the respondent opposing the parent, by proper pleading and proof, tenders an issue as to the parent's disqualification. A further development of the rule would be that the duty of the court to hear evidence, to determine with whom the balance of advantages and disadvantages lie, would only arise in a case where the parent's disqualification was put in issue, and where there also appeared some disqualifying factors as regards the respondent. In such case it is quite clear that the entire field of inquiry would be necessarily and properly opened up.

Were the two decisions mentioned the only ones to be considered, there would be little difficulty. But in Peese v. Gellerman, 51 Tex. Civ. App. 39, 110 S. W. 196, 197, the San Antonio Court of Civil Appeals, while admitting that the holding in Legate v. Legate had been

"parried in a later case by the Supreme Court," referring to State v. Deaton, supra, nevertheless expressed the view that the fact that a parent had voluntarily parted with the custody of his child destroyed the presumption that its best interest was with the parent and opened up the inquiry as to ·the best interests and welfare of the child. In other words, that court clearly refused to recognize the authority of State v. Deaton and adhered to Legate v. Legate. A significant fact is that the Supreme Court refused· a writ of error. To precisely the same effect was the later decision in Dunn v. Jackson, 231 S. W. 351, an opinion by the Commission of Appeals, 'expressly approved by the Supreme Court. The last decision, it seems to us, entirely fails to take notice of the conflict in State v. Deaton with Legate v. Legate. At any. rate, in reaffirming that the burden of proof rested with the respondent to establish facts necessary to overcome the legal presumption in favor of the parents' custody, as held in State v. Deaton, any effective operation of such presumption was immediately nullified and destroyed by the further holding that: "*It does not require, however, that respondent prove the parent disqualified by misconduct or misfortune*; [italics ours] but the burden resting upon respondent is met by establishing that the best interests of the child demand that she remain in the custody of respondent." In so holding there was but a reaffirmance of the holding in Legate v. Legate in the very particular in which the last-named holding was modified and necessarily overruled in State v. Deaton. On the authority of Legate v. Legate, the two decisions above mentioned following it, and apparently ignoring any effect to be given State v. Deaton, there have been a great number of cases decided wherein the determinative issue was the paramount interest and welfare of the child, although the parent was admitted or found to be not disqualified to have the custody. Of such cases may be mentioned by way of examples: Ball v. Smith (Tex. Civ. App.) 156 S. W. 576; Radicke v. Radicke (Tex. Civ. App.) 206 S. W. 964; Cecacci v. Martelli (Tex. Civ. App.) 235 S. W. 951; Miller v. Banks (Tex. Civ. App.) 280 S. W. 301; Jones v. Warren (Tex. Civ. App.) 300 S. W. 146.

In Miller v. Banks, supra, Judge·McClendon recognized the essential conflict in State v. Deaton with the rule announced in Legate v. Legate, but regarded the action of the Supreme Court in approving the opinion in Dunn v. Jackson, supra, as expressing the later views of the Supreme Court.

But it is also true that, following State v. Deaton, supra, are to be found perhaps an equal number of decisions expressly recognizing the rule that, in the absence of moral unfitness or other disqualifying cause, the parent as a matter of law has the best right to the custody of the child. Smith v. Moore (Tex. Civ. App.) 171 S. W. 822; Watts v. Lively (Tex. Civ. App.) 60 S. W. 676; Parker v. Wiggins (Tex. Civ. App.) 86 S. W. 788; Sancho v. Martin (Tex. Civ. App.) 64 S. W. 1015; Hall v. Whipple (Tex. Civ. App.) 145 S. W. 308; Walker v. Finney (Tex. Civ. App.) 157 S. W. 949; State v. Dowdell (Tex. Civ. App.) 168 S. W. 2; Carter v. Lambert (Tex. Civ. App.) 214 S. W. 566; Cardenas v. Barrera (Tex. Civ. App.) 216 S. W. 474; Burchard v. Woodward (Tex. Civ. App.) 223 S. W. 707.

With the decisions expressing such apparently contrary views, we doubt if Judge Powell, in Edwards v. Edwards (Tex. Com. App.) 295 S. W. 581, 582, was fully justified in saying as he did that "any court, in this day and time, must know that, under the law, where a parent can procure money to meet the needs of the child, * ·* *· the parent is entitled to the child, unless morally unfit." But whether the suggestion as to what the courts ought to know was exactly warranted or not, the statement quoted is of 'very great importance. It is manifestly a reassertion of the Supreme Court's former holding in State v. Deaton, and Judge Powell's opinion was expressly approved by the Supreme Court. In approving the opinion. the Supreme Court must have lent its sanction to what was said concerning the decision in State v. Deaton, as follows: "Perhaps no stronger case was ever written by our Supreme Court than that of [State ex rel.] Wood v. Deaton, 93 Tex. 243, 54 S. W. 901, quoted at length by the Court of Civil Appeals herein. Less than thirty days ago, this section of the Commission cited that, and other Supreme Court cases, with approval in rendering its decision in the case of Henry Castro v. Rosa Vasquez Castellanos et al., 294 S. W. 525."

This, unless we have overlooked some case, is the very latest· expression of the Supreme Court's views on the question under consideration. If our judgment did not permit us fully to concur, it would no doubt be our duty, nevertheless, to follow it. Our investigation of the question however, has led us to a full appreciation of the wisdom and justice of the law as thus redeclared. Every one must recognize that there is of necessity some limit to the power and right of a court to sit in judgment, and upon a mere weighing and balancing of supposed advantages and disadvantages to determine whether the custody, care, and control of a child shall or shall not be taken from a parent who is fully qualified morally and financially to care for it. On one side of a street resides a family, poor, of mediocre intellect, and whose moral perceptions are not relatively the most delicate and refined, but on the whole a family of no known criminal tendencies, and the children, of whom there are a great number, do not come within the statutory definition of a "neglected child." Rev. St. 1925, art.

2330. One child wanders across the street into the home of another family, rich, highly intellectual, of unimpeachable morals, who have no children and who conceive the idea, unconsciously influenced perhaps, by an unrequited paternal instinct, that the best interest of the child is paramount to any rights of the parents, and can best be subserved by taking exclusive possession, care, and control of such child. In a suit by the parents to regain possession of the child, is any court going to try out an issue of the child's best interests and welfare by comparing the relative advantages and disadvantages? Will any court, in a case such as the one supposed, even permit respondent to show that the parents are positively disqualified? Certainly not. Both in Legate v. Legate and State v. Deaton, the court's jurisdiction to determine the best interest of the child was expressly predicated upon the fact that the parent had voluntarily surrendered custody of the child and confided it to another so as to make recourse to the courts necessary. In a goodly number of the decisions, simply applying what was said in Legate v. Legate, it seems to have been the view of the courts that the last-named fact alone was sufficient to open up the entire question of the child's interest and welfare. For instances, see Clark v. Hendricks (Tex. Civ. App.) 164 S. W. 57; Fasel v. Gunning (Tex. Civ. App.) 249 S. W. 875; Peese v. Gellerman, supra.

Such cases, it would seem, simply fail to recognize that any further limitation was placed upon the rule. By the decision in State v. Deaton, as we have in effect already said, the Supreme Court distinctly repudiated the proposition that the voluntary relinquishment by the parent of the custody of the child to another opens up for inquiry the question of the child's best interests and welfare in the absence of any question of the parent's lack of qualifications. All such inquiry is simply foreclosed by the presumption, and it is necessary that an issue be presented on a question of the parents' disqualification.

If, then, the law be as declared in State v. Deaton, supra, and reaffirmed in Edwards v. Edwards, supra, the next question is: How is it to be applied in this case? The answer of appellees, as summarized above, shows that while, in addition to the claim based upon a valid transfer of parental authority and adoption, there was sought to be tendered an issue as to the child's welfare, it was clearly not done upon any theory of appellants' disqualifications. By no kind of legitimate implication or inference can the answer be construed to charge any disqualification of appellants.

This brings us to consider whether it be necessary to tender the issue by pleadings. In State v. Deaton it was said, with reference to raising the issue, "upon him who so avers [italics ours] devolves the burden of proof," etc. Here is a clear recognition of the necessity of presenting the issue by pleadings. One of the important questions decided in Legate v. Legate was that a habeas corpus proceeding for the custody of a child was a "civil suit." The necessity of appropriate pleadings naturally follows. In Vickers v. Faubion (Tex. Civ. App.) 224 S. W. 803, 805, the court said: "Since this is a civil action, to determine the right to the custody of the child, * * * and the rights of the parties are to be determined, as in any other civil action, the parties should, in their petition, plead the necessary facts constituting their right to the custody of the child, and the facts showing the incompetency of the other party." (Italics ours.)

And again in Conyer v. Burckhalter (Tex. Civ. App.) 275 S. W. 606, 610: "The rules of pleading and practice applicable to civil actions generally should apply with equal force and effect to proceedings in the form of habeas corpus to determine the right to the custody of a child."

There was therefore no basis in the pleadings, we think, to support the judgment of the trial court, based upon considerations of the child's welfare. If the evidence could properly be viewed as raising a question of appellants' disqualifications, we would be disposed, in the exercise of a recognized discretion, to remand the case for another trial upon amended pleadings. We do not think, however, that the facts warrant such action. The only evidence that squints at a moral issue is the fact that the child was born nearly a month before the marriage of its parents. It is not necessary for us to say whether or not that suggests a disqualifying fact. It occurred more than three years ago. The evidence rather fully establishes the later good standing, morally, socially, and financially, of the appellants. Smith v. Moore was a very similar case (Tex. Civ. App.) 171 S. W. 822. There the parents' right to the custody of the child was fully sustained. All of the other findings of the trial court tending in the least to disclose a possible issue involving disqualifications of the appellants are deemed either too inconclusive, or else are wholly without support in the evidence. For instance, we find no evidence justifying the conclusion that neither of the parents "have ever evidenced any great concern or displayed any great affection for the child." There is no dearth of evidence showing that appellants manifested a very lively concern regarding the child and covering a period of more than two years time, as best indicated by the efforts put forth to locate it. We do not regard the absence of extreme solicitude of the parents for the child during the first few months, which must have been a period of great embarrassment, as sufficiently indicating a real issue involving the fitness of these young people to properly care for their child. By the law it has been fully legitimated by

their marriage. The record wholly failing to suggest the probable existence of a real question of their right to have the child, we do not feel it our duty to send the case back to be tried on such entirely new theory.

We sympathize deeply with these good people who have taken the child to their hearts and given it a home, but the principle of law which we have concluded is applicable to the case is one, we think, which generally tends to promote the best interests of society. Such situations can always be avoided by procuring a legal transfer of parental authority or by making an adoption after the expiration of a three years period of abandonment.

The judgment of the trial court is therefore reversed, and judgment is here rendered that the appellants have and recover of the appellees the custody, care, and control of said minor child.

## On Rehearing.

With much force and persuasiveness learned counsel for appellees, upon special leave, have argued in support of their motion for rehearing that in the decision of this case we have unduly narrowed the controlling issue involved. It is contended that the real issue was the best interest and welfare of the child, and that we have limited it to that of the qualifications of the parents to have the custody of the child. The distinction is especially important as affecting the proper disposition of the case, even if we are right in holding that the judgment of the trial court should be reversed. If the real issue be the best interest and welfare of the child and the disqualification of the parents but an evidentiary matter, then in a sense it may be said to be true that the pleadings presented the issue of the child's best interest and welfare. If such issue was presented by the pleadings and the question of the disqualification of the parents was not of controlling importance, it would perhaps be our duty, in the state of the record, to remand the case rather than to render judgment for appellants. Castro v. Castellanos (Tex. Com. App.) 294 S. W. 525; Edwards v. Edwards (Tex. Com. App.) 295 S. W. 581. On the other hand, if we are correct in holding that no issue of the child's best interest and welfare properly comes into the case except upon pleading and proof tendering an issue of the disqualification of the parents, then, in the absence of both such pleading and proof, we think it our duty to render the judgment. State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S. W. 901. The cases of Castro v. Castellanos, supra, and Edwards v. Edwards, supra, have no application on this point, since in those cases there were presented issues as to the disqualification of the parents. Although there is abun-

dant authority for remanding causes to permit the introduction of additional evidence or to amend pleadings, we do not believe this court is under duty to remand a case to enable the appellant to both plead and prove an entirely different case.

It is earnestly insisted that in State ex rel. Wood v. Deaton, supra, the Supreme Court did not intend to modify its previous holding in Legate v. Legate, 87 Tex. 248, 28 S. W. 281, but simply to clear up the misunderstanding of the trial court and Court of Civil Appeals on the question of burden of proof. To what was said in the original opinion expressing a contrary view, we only deem it necessary to say further that we cannot so construe that opinion for the additional reason that, if such was the only purpose of the court, then it was not proper for the court to render the judgment that it did. Only upon the theory that the court's finding that the parent was qualified to have the custody of the child was controlling on the ultimate question of the child's best interest and welfare was the court justified in rendering judgment instead of remanding the case. We think it quite evident that the court's quotation from State v. Richardson, 40 N. H. 275, set out in the original opinion, is to be regarded as expressing the views of our Supreme Court, since, as we see it, same constitutes the sole justification of the court's judgment.

Appellees earnestly contend that the Supreme Court cannot properly be held to have approved that part of the opinion in Edwards v. Edwards, supra, wherein it was said: " * * * Where a parent can procure money to meet the needs of the child, * * * the parent is entitled to the child, unless morally unfit." It should be borne in mind that the trial court found that it was "to the best interest" of the boy that it be placed in the care and custody of its grandparents. The appeal only involved the judgment in so far as it awarded custody of the boy. If then the question of the child's best interest was of controlling importance and the question of the parent's disqualification was not of controlling importance, there being evidence to support the issue of the child's welfare in favor of the grandparents, why did not the Supreme Court, by its judgment, affirm the judgment of the district court? Only on the theory, it seems to us, that the question of the parent's qualifications was of controlling importance was the court justified in reversing and remanding the case. If so, the Supreme Court, in approving the holding of the Commission of Appeals, must necessarily have approved that portion of the opinion above quoted.

The motion for rehearing is overruled.