REEVES et ux. v. TUNNELL et ux.
(No. 10639.)

Court of Civil Appeals of Texas. Dallas.
Oct. 21, 1929.

Rehearing Denied Nov. 9, 1929.

H. C. Williams and Autry Norton, both of Dallas, for appellants.

Hughes & Monroe, of Dallas, and Olen Crisp, of Kaufman, for appellees.

VAUGHAN, J. This is an appeal from a judgment rendered in habeas corpus proceedings instituted by appellants, J. A. Reeves and wife, Mrs. Clara Reeves, in behalf of Howard Authur Hicks, the minor son of appellant, Mrs. Clara Reeves, formerly the wife of Clarence Authur Hicks, now deceased, the father of said minor, to recover the custody, care and control of said minor. The writ of habeas corpus was duly granted May 1, 1929, and hearing had thereon on the 11th day of May, A. D., 1929, resulted in a judgment in favor of appellees, H. H. Tunnell and wife, Lillian Tunnell, awarding to them the custody, care, and control of said minor.

Under our view of this case, it is not necessary to discuss the proceedings had on the trial leading up to the rendition of judgment, or the issues presented by the pleadings, further than to say that the disqualification of appellant Mrs. Clara Reeves for the proper discharge of her parental duties to her minor son, Howard Authur Hicks, was not in any respect put in issue by the pleadings.

Following are the facts as found by the trial judge: "That Howard Arthur Hicks is a juvenile five years of age; that at the present time he is in the custody of his aunt and uncle, and has been in their custody about three years; that Mrs. Clara Reeves, the mother of said minor, turned him over to appellees for the purpose of rearing and educating him as their own child; that at said time he was in the State of Oklahoma with a relative; that at the request of said Mrs. Clara Reeves appellees went to Oklahoma and obtained said child, who was then a small infant; that it was the understanding and agreement by and between the mother and guardians of said child and appellees, that said child should be adopted by them if they so chose, and that said child was never again to be returned to his mother; that in pursuance of said agreement, appellees took said child to their home in Crandle, Texas, and have cared for him as their own; that said appellees are upstanding and outstanding people of the Crandle community; that appellee, H. H. Tunnell, is a farmer, owns the Chevrolet agency in Crandle, is a man of some means and has an income of approximately $6,000.00 to $10,000.00 a year; that appellees have no children other than the said Howard Arthur Hicks, the child in controversy; that said child has had every care, is now being reared in a Christian atmosphere and wholesome surroundings; that appellees are fit persons to have the custody, care, education and control of said child; that the mother of said child, Mrs. Clara Reeves, has recently married a man by the name of J. A. Reeves; that J. A. Reeves was a widower and has living with him three children born to him. by his first wife; that the said Mrs. Clara Reeves, mother of said Howard Authur Hicks, has three other children of tender age; that the three children of J. A. Reeves and the three children of Mrs. Clara Reeves are living with appellees in a four-room house in Dallas; that appellant, J. A. Reeves, makes a small salary and has no other income save and except that of his employment; that Mrs. Clara Reeves had never made any demand for the return of said child until about three weeks before the filing of this suit; that during the time said child has been with appellees they have brought him to visit his mother at various times, and on every occasion that she requested to see the child; that she, before her marriage to J. A. Reeves, on or about the first day of January, 1929, threatened to place all of her children in an orphanage, so that she could remarry; that the said Mrs. Clara Reeves, mother of said Howard Authur Hicks, had, on various occasions, when said child visited her, been very harsh and severe with him; that she chastized him by striking him unnecessarily; that by acts and conduct on the part of the mother of the child she has rendered herself unfit in a degree to have the custody, care and control of said child; that said child is healthy and happy in his present surroundings, and that no person has suffered by reason of said child being in the custody of

appellees; that it is for the best interest of the child that it remain in the custody of appellees."

■ Following is all of the testimony that, in any respect, bears upon the disqualification of appellant Mrs. Clara Reeves, to have the custody, care, and control of her said child, as to any severe treatment of him by her, and as to the ability of appellants to provide said child with the necessities of life:

Mrs. J. A. (Clara) Reeves testified as follows:

"I have been married to Mr. Reeves since the 9th of March, 1929. My first husband's name was Authur Clarence Hicks, he is dead. We had four children by that marriage; three of the children are in my home and one is in Mr. H. H. Tunnell's home; his name is Authur Howard Hicks. They have had the child three years in October. He will be six years old the 7th day of September. Mrs. Tunnell is a sister of my first husband and this boy in controversy is the child of Authur Hicks. My present husband works at the East Dallas car barns, inspecting cars; he receives a salary of somewhere near $130.00 per month. He has been working for them twelve years. He owns some preferred stock in the Dallas Railway Company. I do not think he owns any personal property. He is 40 years old. We rent the place where we live and pay $20.-00 a month rent. Taking this boy it would make seven children, four of my own and three of my husband, living in a four-room house and a sleeping porch, which is just like a room and used for a bedroom. At the time the baby (referring to Howard Authur Hicks) was sick at Crandle, I had three down sick, and was sick myself, and was scarcely able to go to the telephone. The sickness in my family was the flu, and his trouble was flu. The reason I did not go to him was because I had three children sick. We now live on Gilliam Street in Trinity Heights, have a large place there for a city place; we cultivate a part of it and have fresh vegetables, etc.; we also have a cow. My children are in school and Mr. Reeves' children are in school. His oldest son is going to high school in Oak Cliff. I am a member of the church and attend regularly on Sunday. My husband is also a member of the church and is a regular attender. The children all go to Sunday School every Sunday. I did spank the child one time; I spanked him for taking God's name in vain. He did not learn that in my home."

Appellant J. A. Reeves testified:

"I am willing to take this child into my home and treat him the same as the other children, and I will do it if he is awarded to me. I will see that he receives an education, the proper clothing and schooling, I am a Christian myself, a member of the church and attend regularly. I have assisted my wife to the extent of bearing the expense of this litigation to get her own child. I am anxious for her to have her child for her own good and for mine. I make $135.00 per month, working for the Dallas Railway Company. I have one older son who is in the Sunset High School, he works after school, he makes about $2.50 per day, he lives at home. All of the children are at home."

Mrs. Lillian Tunnell, one of the appellees, testified as follows:

"We have had this little boy three years this coming October. We had some conversation about legal adoption. The conversation was that we were to adopt him. The child was not adopted because we just neglected it and did not think she would go back on her word. We did not adopt this child before this time because he is the last of his line with that name and we did not want to change the name. When we took the child we took two children down there, but we brought one of them back. She (referring to Mrs. Clara Reeves) did work but she did not support them. We had to help her out. As to whether she did all in her power she could have done more. Something has been said about this child using the Lord's name in vain; he never said anything like that. The only thing he said was 'good grief'; he did not say 'Good God,' and she did not say he said that. I heard what he said, I was there and with him when he said 'good grief.' I saw her whip him and she apologized. I did not come in when she was spanking the child—she was beating it. She told me then the child had told her 'God dam it' twice. She did not tell me she asked the child where he learned it; she did not tell me any such thing. She was not spanking the child for using that language; she was spanking it because he would not give way to the other child. The baby corrected himself and said, 'Mama, I did not say that.'"

Mrs. R. M. Parks, a witness in behalf of appellants, testified as follows:

"I know Mr. and Mrs. J. A. Reeves. Mrs. Reeves used to be Mrs. Hicks. She used to be my neighbor. She lived next door. I had an opportunity to see her and observe her in her daily life. She talked with me about her children frequently. She had three children at home at that time. She certainly loved and cared for those children as a mother should. I certainly think she exercised the proper care for those children. She supported them and gave them the necessities of life. She talked frequently about another child she had, but not at home. She told me she loved this child and wanted it back. From my observation and from my experience, living as Mrs. Hicks' neighbor for quite a while, I certainly think she is in every respect a proper person, morally, physically and otherwise, to have the custody, care and control of her children. I certainly think that she is. I can say that she was very fond of her children and treated them all as a mother should. She stated she wanted to get them all together."

We have not been able to gather from the above testimony, which is all that bears upon the disqualification of Mrs. Clara Reeves and J. A. Reeves, appellants, to have the custody, care, and control of the said Howard Authur Hicks, proof of any fact or facts that, in our judgment, warrants the finding of fact by the trial judge "that the said Mrs. Clara Reeves, mother of this child has on various occasions, when said child visited her, been very harsh and severe with said child," and "that by acts and conduct on the part of the mother of said child she has rendered herself unfit in a degree to have the care and control of said child," or that supports the trial court's conclusions of law "that J. A. Reeves and his wife are not the proper and fit persons to have the custody, care and control of said child," and "that the conduct on the part of the mother of said child by surrendering said child over to H. H. Tunnell and wife, is equivalent to his abandonment." As to the possession of said child by appellees, the testimony established that he had been in their possession for about two years and a half before the petition for writ of habeas corpus was filed.

As to the other findings of fact by the trial judge, there is sufficient evidence to support same. Said additional findings are therefore binding upon this court. In cases of this character, what is the paramount issue—that is, the issue by which the custody, care, and control of the child should be determined, namely, the question as to the disqualification of the natural parent by immorality or other sufficient cause, for the custody, care, and control of her child, or the best interest of the child without reference to the disqualification of the parent for the proper discharge of parental duties to the child?

We know of no law, divine or human, under the operation of which there has been or can be created a more profound and reciprocal relationship as to rights and duties, interest and care, than that created by the law of association between the male and female, whereby the human family is replenished and civilization perpetuated.

By the very environments of life there is created between the parent and child the closest of correspondence, feelings of devotion, care, and interest; and, as a corollary of parental rights, there exists with the parent the duty to provide, care for, protect, and nurture their offspring to the best of their ability, along the lines that will be to its best interest physically, mentally, and morally. Who could have a greater desire for, or interest in, thus bringing up the child than the natural parents—especially the mother, the child being bone of her bone, and flesh of her flesh? No one, except in the absence of natural feelings of care and interest on her part—a rare condition found to exist.

With this relationship there is brought into operation and exists a natural law (in fact, the law of being) of the first importance, whereby the custody, care, and control of a child during infancy is made to rest with the natural parents. The inexorable law of necessity so dictated with the advent of life through the travail of the first mother, and throughout all the ages, has remained unaltered by the law of its creation, which is the same to-day as it was in the beginning, and will forever be.

The custody of the child being, both by the law of being and by legislative enactment, with his natural mother, her right to his custody, care, and control cannot be disturbed or interfered with solely on the ground that such right should cease because his best interest demands that she be deprived of her parental authority; for the best interest of the child can only become paramount on it being affirmatively established that his mother was disqualified for the proper discharge of her parental duties, and, until her disqualification has been so established, she undoubtedly has the right to the custody, care, and control of her infant child. State v. Deaton, 93 Tex. 243, 54 S. W. 901; Sears v. Davis (Tex. Civ. App.) 19 S.W.(2d) 159; Weir v. Marley, 99 Mo. 484, 12 S. W. 798, 6 L. R. A. 672.

There is another phase of this case presented by article 44, Rev. St. 1925, which requires consideration at our hands. We are of opinion that this statute was enacted for the purpose of regulating and controlling the transfer by parents of their parental authority to another, and, being comprehensive of the subject dealt with, we think excludes any other plan or method for the transfer of parental authority and custody than that specifically designated in said statute, namely: (a) The parent or parents of a child who is to be adopted in accordance with the provision of article 42, Id., may by an instrument in writing duly signed and acknowledged, as deeds are required to be, transfer their parental authority and custody of such child to the adoptive parent; (b) where the lawful parent or parents have voluntarily abandoned such child and left it to the care of others for a period of at least three years, and such child shall be adopted in accordance with the provisions of said article 42; or (c) where the lawful parent or parents have voluntarily left such child to be cared for by charity for a period of at least three years, and such child shall be so adopted, then in either event such parent or parents will be held to have transferred their parental authority and custody over said child to the adoptive parent, and in all such cases the lawful parents shall thereafter be barred from exercising any authority, control, or custody over the person or estate of such child, as against the adoptive parent.

The provisions of said articles 42 and 44 are interrelated, in that the transfer of parental authority and custody in either one of

the three respects provided for by said article 44 must be to a person who has adopted the child as his legal heir, in accordance with the provisions of said article 42, otherwise the provision of article 44, that the lawful parent "shall thereafter be barred from exercising any authority, control or custody over the person or estate of such child as against the adoptive parent" will not apply.

It will be noticed that said bar only operates against the lawful parent in favor of the adoptive child. Appellees, nor either one of them, having adopted the child, Howard Authur Hicks, were not in position to invoke the benefits of the provisions of said article 44. The disqualification of appellant Mrs. Clara Reeves for the proper discharge of her parental duties not having been put in issue by the pleadings, the court erred in awarding the custody, care, and control of said minor to appellees, but should have made that award in favor of appellant Mrs. Clara Reeves. Therefore the judgment of the court below is reversed and judgment rendered in favor of Mrs. Clara Reeves, awarding to her the custody, care, and control of her said minor child.

Reversed and rendered.