Remona MARTIN, Appellant

v.

Billy Vern PITTMAN et al., Appellees.

No. 10635.

Court of Civil Appeals of Texas.

Austin.

Feb. 18, 1959.

Tom H. Davis, Austin, for appellant.

B. P. Traynor, Austin, for appellees.

ARCHER, Chief Justice.

This is a child custody case.

Deborah Ann Pittman is the daughter of Billy Vern Pittman and Joan Martin Pittman and was born April 6, 1955.

A petition for a divorce was filed by Joan Pittman against Billy Vern Pittman on September 5, 1956, in Travis County, and a waiver was filed by the defendant and a divorce was granted and the custody of Deborah was awarded to her mother. The father was ordered to pay $30 per month for the support of the child.

On April 30, 1957, Joan Pittman married Robert UpChurch and on June 1, 1957 she was killed in an automobile accident.

Remona Martin, the maternal grandmother, caused to be filed a petition to have Deborah declared to be a dependent and neglected child and to terminate the father's parental rights and to have the child placed in her custody. On June 7, 1957, without notice to the father, an order was entered granting the relief prayed for.

On August 28, 1957, the father, learning of the order, filed a petition to have it set aside. Prior to this time Billy Vern Pittman had married Addie Shropshire. On a hearing before the court on January 6, 1958, an order was made and dated May 15, 1958 but was entered under date of May 22, 1958, setting aside the judgment rendered in Cause No. 107,233 restoring the parental rights of the father.

On May 19, 1958, Remona Martin filed her motion to reopen the hearing held on May 15, 1958, and alleged that on May 18, 1958, she, for the first time, became aware of newly discovered evidence which would have a material bearing upon the order theretofore entered, such as would conclusively establish that fraud had been perpetrated on the Trial Court, and that such order was secured by false and misleading testimony and prayed for a time and place to be set for a hearing on the motion, etc.

On May 23, 1958, Mrs. Martin filed a second motion requesting that the case be reopened in order that she be allowed to present further and additional testimony having material bearing on the merits of the suit, and sought a restoration of the order in Cause No. 107,233 declaring Deborah Ann Pittman to be a dependent and neglected child and terminating the parental rights of the father, that the custody of the child be placed in Mrs. Martin, that the father be instructed not to permanently remove the child from Travis County, and commanding the return of the child to Travis County.

On May 27, 1958, a hearing was had on the motion filed on May 23, 1958, and the evidence offered by the parties was heard and considered and the motion was denied. It is from this order that the appeal is taken.

Appellant filed a request for findings of fact and conclusions of law. The court made findings of fact as to the parentage of the child, the divorce, the death of the mother, the filing of the petition to have the child declared to be a dependent and neglected child, of the address of the father, of the entry of the order of June 7, 1957 placing the child in the custody of Mrs. Martin, and that no process was issued or service had on the father.

The Court further found:

"* * * that on August 30, 1957, plaintiff filed his petition herein to have said dependency judgment vacated and set aside upon the grounds that at the time said judgment was entered said child was not a dependent and neglected child within the meaning of Article 2330, Vernon's Annotated Texas [Civil] Statutes; that said suit was timely brought, and that the plaintiff, having had no notice of said dependency proceedings was entitled as a matter of law to a full hearing on the issue of whether sufficient facts existed as to authorize the entry of said judgment declaring said child to be dependent and neglected.

"7. I find that said child was never dependent upon the public for support.

"8. I find that said child was not neglected or abandoned by plaintiff within the contemplation of our dependency statutes.

"9. I find that plaintiff never voluntarily relinquished his right to the custody of said child and that he is not disqualified to assume the care, custody and control of said child.

"Conclusions of Law

"I conclude that Deborah Ann Pittman was not, at the time the judgment in said Cause No. 107,233 was entered or subsequently thereto, a dependent or neglected child within the meaning of Article 2330, Vernon's Annotated Texas [Civil] Statutes, and that said judgment is not binding upon the plaintiff, Billy Vern Pittman.

"I conclude that plaintiff, Billy Vern Pittman, being the natural and lawful father of said child, and its mother being deceased, and plaintiff's parental rights never having been legally terminated, and plaintiff being not otherwise disqualified, that he, Billy Vern Pittman, plaintiff herein, is entitled to the custody and control of his daughter, Deborah Ann Pittman."

The appeal is based on nine points and are that the Trial Court erred in refusing to grant a new trial because the evidence presented in appellant's motions established Billy Pittman's unfitness as a father, in refusing to grant a new trial because it was not to Deborah Ann Pittman's best interest to place her in the care of Billy Pittman, that the case should be reversed and rendered for appellant because of Billy Pittman's unfitness as a father and not to the best interest of Deborah Ann, in refusing to hold as a matter of law that Deborah was a dependent and neglected child, that the great weight and preponderance of the evidence is against the court's holding that Deborah was not a dependent and neglected child, and that the best interest of the child

required that she remain in appellant's custody.

We shall consider the evidence offered on appellant's motion to alter and amend the previous orders on the grounds of a material change in conditions.

Mrs. Martin, on direct examination, testified that she sold Billy Pittman a 1946 gray Plymouth automobile and in response to questions, testified:

"Q. Mrs. Martin, after our hearing in this case on January 6th, did you at my request keep a written diary of the times and occasions that Billy either called to inquire about Debbie or came to see Debbie?

"A. Yes, I did. I kept a record of the contacts he made.

"Q. And during those times was he free to see her at most any time he wanted to?

"A. Yes, I tried to cooperate with Judge Gardner and give Bill an opportunity to take Debbie. I had hoped that things would work out. I was impressed with Addie, and I hoped that things would work out, and that Bill would change, and that he could make a home for Debbie."

Further testimony was concerning conversations with Addie and as to the child's toys and clothes.

Norman Singleton, an employee of a detective agency, testified that he set up a surveillance on a house on Avenue H in an effort to find where Mr. Pittman was staying and with whom on Wednesday, May 21 and Thursday, May 22, and had also looked for Pittman at the State Hospital but did not find him; that later in the night Pittman's car was located at 5107 Avenue H, a Garage Apartment, and that he remained there but no one came for the car. The witness then went back to the State Hospital and was told by an attendant that Pittman and a Mrs. Styles had left there in a Buick to go and pick up the children and on re-

turning to the address on Avenue H, he saw a black Buick going north but could not tell whether it was being driven by a man or a woman. The witness and another agent, his brother, stayed near the apartment until 10:30 the next morning, when the witness left for coffee, and on his return he was told by the other agent that a man answering the description had left with the car.

The witness then went to the apartment and told the lady he was a finance bill collector and that there were two small boys present.

On cross examination the witness testified that he had been employed by appellant to make the investigation and that he did not see Billy Pittman at either of the two places.

Rod Singleton, a brother of Norman Singleton, and an employee of a detective agency, testified that he and his brother did not actually see anything except the Plymouth parked in the driveway next to the apartment. That at about 11:30, the other agent went to the Hospital grounds; that at 11:48 a Buick automobile came and a man and a woman went into the apartment; that the next morning two little boys came out to play and at 10:02 a man answering the description of Pittman came downstairs and got in the Buick and drove off. The witness identified two pictures of Billy Pittman and the man who came out of the apartment fits the description of Pittman. On cross examination the witness would not say that the man who went in the house was Billy Pittman definitely—not for sure.

Russell L. Sprayberry, called as a witness by appellant, testified that he lived next to 5107 Avenue H; that a man and a woman with two little boys moved in on Tuesday or Wednesday; that the man had a 1947 Plymouth, which, with a red Buick, was parked in the driveway; that he talked with the man who said his name was Pittman and who said that he and his wife worked at the State Hospital and that he was going to Oklahoma.

Milton George Milstead, secretary for the Y.M.C.A., testified that Billy Pittman registered at the Y.M.C.A. Wednesday but did not sleep there.

William Stern, called by the appellant, testified that he met Billy Pittman at the State Hospital and knew Ocie Styles, who worked there; that he saw Pittman and Mrs. Styles together in a gray Plymouth and saw them leave the hospital grounds and saw them together again in a red Buick.

Mrs. Martin testified that Billy Pittman had not contributed much in 1956 for the support of Deborah; that in 1957 Billy sent $100 and none since.

The witness testified as to conversations with Addie and also talked with Addie in Palestine, Texas.

We have not thought it necessary to set out the evidence heard by the Trial Court at the January 6, 1958 hearing in detail except to observe that the evidence supported the judgment of the court. Mr. Pittman testified that he wanted his child. His present wife Addie S. Pittman testified that she was willing to care for Deborah just like her own daughter and was capable of so doing.

As is aptly stated by the Supreme Court in DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, at page 694:

"Moreover, the trial judge after seeing the witnesses and hearing their testimony rendered judgment in favor of the DeWitts, and thereby impliedly found that the best interests of the child would be served if the child was left in their custody. This was essentially an issue of fact to be determined by the trial court, and since there was ample evidence to support the finding of the trial court, the Court of Civil Appeals was without authority to overrule that decision."

In Medrano v. Rodriguez, Tex.Civ.App., 209 S.W.2d 208, 209, no writ history, this Court held:

"When unfortunate circumstances make it necessary for a court to determine the future welfare and best interest of children, the best interest of the children is not to be measured alone by the will and desire of the parties, but must be determined by looking to the future welfare and best interest of the children in their relation to the state and society. Schneider v. Schwabe, Tex.Civ.App., 143 S.W. 265. Until the natural parent is shown to be disqualified or unfit to have such care, custody and control of minor children, the presumption is that such best interest will be served by the natural parent retaining custody. Reeves v. Tunnell, Tex.Civ.App., 21 S.W.2d 365, no writ."

Voight v. Carlson, Tex.Civ.App., 310 S.W.2d 588.

We then consider the evidence on the motions considered as motions for new trial based on newly discovered evidence, a part of which we have herein set out.

 The Trial Court heard all of the testimony and again saw the former witnesses as well as those testifying for the first time, and concluded that such evidence, uncontroverted, would not probably change the results in another trial, and we do not believe he was in error in so concluding.

By entering the judgment the court found, impliedly at least, that Billy Pittman was not disqualified to assume the care, custody and control of his daughter, Deborah, and that it would be for the best interest of the child to be and remain in the custody of its father. DeWitt v. Brooks, supra.

In Prock v. Morgan, Tex.Civ.App., 291 S.W.2d 489, 492, no writ, it was held that:

"Where an outsider wishes to bring a suit to take a child from the custody of its parent and have it awarded to him or some other outsider, he must bring such suit under the provisions of Arts. 2330 and 2331, and must be prepared to prove that the child is a dependent or neglected child, or that the parent or parents having its custody are unfit persons to have such custody. Until this is shown the law presumes that the custody of the natural parent is best for the child."

We do not believe that the court abused his discretion in overruling the motion for a new trial and was not bound to believe the evidence of the two detectives or the others testifying, but had the authority and duty to consider such together with the prior testimony.

The trial judge in this case has had much experience in custody cases and found that it was for the best interest of the child to be placed with its father. We would not be justified in reversing such action.

The judgment of the Trial Court is affirmed.